IOWA SECURITIES COMPANY, appellant, v. RICHARD E. SCHAEFER et al., appellees.

No. 51251.

(Reported in 126 N.W.2d 922)

220

March 10, 1964.

Francis J. Pruss, of Cedar Rapids, for appellant.

Robert J. Stone, of Marion, and Lynch, Dallas, Smith & Harman, of Cedar Rapids, for appellees Winfield A. White, Charles J. Schaefer and Frances E. Schaefer.

Moyer & Bergman, of Cedar Rapids, for appellees Thomas E. McGowan, Inc., and Thomas E. McGowan.

Nazette & Bromwell, of Cedar Rapids, for appellees Shirley Mae Burke and Richard E. Schaefer.

THOMPSON, J.—The life of a real-estate broker is in some respects a precarious one. He must procure an offer upon terms stated or at least satisfactory to his principal, or at least be the effective cause of a sale. If he fails to do one of these things, his efforts, no matter how diligent, will be without material reward. On the other hand, if he becomes entitled to compensation, it will generally be substantial. He operates upon the principle that the greater the risk of no pay, the greater the amount if he becomes entitled to his commission; or so it seems, at least, to the layman. With him, it is all or nothing, a feast or a famine.

So in the case at bar. The plaintiff believes it is entitled to the sum of $8000 for its efforts in attempting to effect a sale of an 80-acre farm lying in the outskirts of the city of Marion; a property which was listed with the plaintiff by the owners at a price of $160,000, at which figure it was eventually sold. However, the sale was not made to a purchaser procured by the plaintiff, and so payment of the stipulated five percent commission was refused by the owners. For various reasons, how-

ever, the plaintiff thinks it became entitled to pay, and has brought this action to recover. The trial below ended, at the close of plaintiff's evidence, with a peremptory verdict for all defendants by direction of the court, and judgment thereon, and we have this appeal.

On January 9, 1960, defendant Frances E. Schaefer and her three adult children, defendants Charles J. Schaefer, Richard E. Schaefer and Shirley Mae Burke, were the owners of the farm in question. On that date the two first named defendants listed it for sale with the plaintiff, through its agent, S. C. Christiansen, by a written listing agreement. The contract is too long to be set out in full; it will suffice to say that it gave the plaintiff the exclusive agency to sell the farm, with provisions that it would be entitled to its agreed commission of five percent of the sale price if the property was sold or exchanged during the life of the agreement by the defendants themselves or by any other person; and that if a sale or exchange was made within 90 days after the expiration of the agreement to any person to whom, with the knowledge of the defendants, the plaintiff had submitted the property during the time of the listing contract, the same commission would be paid.

The listing agreement expired, by its terms, on April 1, 1960. The list price was $160,000. No terms were stated for payment, but on the back of the contract under "Terms" is the word "Submit."

The property had been listed with the plaintiff under an agreement likewise signed only by Frances E. Schaefer and Charles J. Schaefer, on August 28, 1959; this agreement expiring on November 1 of that year. We regard this prior listing of no significance except as it shows that the plaintiff had a considerable opportunity to procure a purchaser during a period of months. No offer was procured, or at least submitted to the defendants, until March 31, 1960, when a written proposal to purchase for the sum of $104,000 on payment terms, which need not be detailed, was made. It is not claimed this offer was sufficient to entitle the plaintiff to a commission; but it led to certain conversations upon which it relies. Mrs. Frances Schaefer, being advised on the evening of March 31 of the offer,

told Mr. Christiansen, according to his testimony, that she did not understand it and referred him to Winfield White, an attorney at Marion, who now appears in this case as a defendant. The offer was made by W. H. Wenkstern; and as a result a meeting was arranged in Mr. White's office for April 8 next. At this time there were present Mrs. Schaefer, Charles Schaefer, White, Christiansen and Wenkstern. The first offer had expired by its terms on March 31, the same day it was made. At the April 8 meeting the same offer, except with a later expiration date, was tendered by Wenkstern, together with an "earnest money" check for $1000.

The offer was rejected by the Schaefers. Wenkstern then asked what it would take to buy the property, and Charles Schaefer replied "just what it is listed for, $2,000 per acre." Wenkstern then asked for an extension of time, and Charles Schaefer replied "you can have thirty days and my word is my bond."

It is pertinent at this point to say that we are throughout this discussion taking the plaintiff's evidence in the aspect most favorable to it which it will reasonably bear. On April 25 next Wenkstern tendered another offer to buy at the agreed price of $160,000, but on terms which would have delayed the final payment of the principal for many years. This offer was again rejected. At a conference in plaintiff's office on April 27 the terms of the offer were somewhat modified, but it was still unsatisfactory to the Schaefers; Charles Schaefer stated they wanted $40,000 down payment; the plaintiff attempted to get him to moderate this request, but he refused; and on April 28 he telephoned Alfred M. Sieh, the real-estate manager of the plaintiff, and told him they were withdrawing the farm from the market and would develop it themselves. No further offer was made by Wenkstern or by anyone else through the plaintiff. On July 15, 1960, a written offer to purchase the farm was made by the defendant Thomas E. McGowan, Inc., and accepted by the defendants. This was followed in August by a written contract between the same parties. The sale price to McGowan was $160,000, on terms satisfactory to defendants Schaefer.

I. Plaintiff's petition is in two counts, labeled "Divisions".

The first claims against the Schaefer family only, alleging that the plaintiff had, on April 25, 1960, procured a purchaser who was ready, willing and able to buy at the price and on the terms stated by the defendants. The second count, which adds the lawyer, Winfield White, Thomas E. McGowan, Inc., and Thomas E. McGowan individually, as defendants, is based on allegations of conspiracy among all defendants to prevent the sale of the farm to Wenkstern and so to deprive plaintiff of its right to a commission.

The facts stated above deny any right of the plaintiff to recover on Count I. It would have been entitled to its commission if it had produced a buyer ready, willing and able to purchase upon the terms specified in the listing agreement, or upon terms which the sellers were willing to accept. Blunt v. Wentland, 250 Iowa 607, 611, 93 N.W.2d 735, 737. If it had been the efficient producing cause of a sale which the sellers actually made it might also recover; but no claim is made that it was such producer of the cause of the sale made to McGowan.

The hard fact is that no purchaser was ever produced who met the terms of the listing or any terms which were acceptable to the Schaefers. No terms were specified in the agreement; a price was stated, and the terms were "Submit". Wenkstern's third offer was for the specified price of $160,000; but this was not to be paid in cash. When no terms are stated, a cash consideration is contemplated. Bente v. Boden, 195 Iowa 669, 670, 192 N.W. 834; Sanden & Huso v. Ausenhus, 185 Iowa 389, 394, 168 N.W. 801, 802.

The listing contract gave the sellers the right to specify the terms upon which they were willing to sell, if a cash offer was not procured. Whether this placed a severe burden upon the broker is not material; it was the contract the plaintiff made and upon which it must rely. Only one prospective purchaser was in fact brought to the sellers' notice by it; only one purchaser, Wenkstern, actually submitted offers through the broker. His first two offers were for a price of $104,000, on terms; his third offer, the one of April 25, met the designated price of $160,000, but upon terms which would have delayed final payment of the principal sum for many years; in fact, the

better part of a century would have elapsed. All these offers were promptly rejected by the Schaefers and they were within their rights in doing so. Some suggestion of a change in the terms was made on April 27; but again this, if it may be considered as an offer binding upon Wenkstern instead of a mere suggestion by the plaintiff's representatives that they might induce him to make such a proposition, was not on terms agreeable to the sellers. At no time was a buyer produced who was willing to purchase upon terms acceptable to the Schaefers. The plaintiff's contention at this point seems to narrow down to the claim that the Schaefers should have been willing to negotiate further. There was no such burden upon them. Three entirely unacceptable offers had been made by Wenkstern, with a fourth suggestion as to what he might be induced to do, which was also not what the sellers wanted. Wenkstern's ability to pay is not in question; his willingness and readiness to meet terms satisfactory to the Schaefers is denied by each offer made. The motion to direct as to Count I of the petition was properly granted.

II. The second string to the plaintiff's bow, delineated in Count II of its petition, asks damages because the defendants, including the Schaefers, the lawyer Winfield White, and the McGowan corporation and Thomas E. McGowan individually are alleged to have conspired to defeat the recovery of a commission under the listing agreement. Interference with the performance of a contract, or conduct causing its breach, gives right to a cause of action. The right to the benefits of a contract is a property right and if it is illegally destroyed the injured party has an action for the damage caused. Shannon v. Gaar, 233 Iowa 38, 42, 6 N.W.2d 304, 307, and citations.

But there must be an existing contract. Shannon v. Gaar, supra, loc. cit. 233 Iowa 43, 6 N.W.2d 307. Here is the first obstacle to plaintiff's recovery on this count. The listing agreement expired by its terms on April 1, 1960. We do not find it was extended thereafter; and the burden was upon the plaintiff to show this extension, if one was made. It is true defendant Schaefers agreed to meet with a representative of the plaintiff and with Wenkstern, at the office of Winfield White,

to discuss Wenkstern's offer, on April 8. At that time Charles Schaefer, who was the active one of the sellers, said to Wenkstern that he might have an additional 30 days to make a further offer. But neither of these things shows an extension of the listing contract. Certainly, if Wenkstern had made an offer acceptable to the Schaefers in that time, or for that matter, since he had been produced and interested in the property by the plaintiff, within 90 days from April 1, the plaintiff would have been entitled to the stipulated five percent commission. But this does not mean the agreement between the plaintiff and Schaefers was extended. Charles Schaefer did not say to the plaintiff "We will give you another thirty days to find a purchaser and the agreement is extended for that time." He said to Wenkstern "You may have another thirty days to make an offer." The extension of time was to Wenkstern rather than to the plaintiff. Except for whatever rights might come to the plaintiff through an offer from Wenkstern, acceptable to and accepted by the sellers, the listing expired on April 1, and was not renewed.

Wenkstern did not take the entire 30 days given him, but made his offer on April 25. It was, as we have pointed out, entirely unsatisfactory and was rejected by the sellers. A few days thereafter they notified the plaintiff they were taking the property off the market. No rights of the plaintiff were transgressed thereby; their listing had expired on April 1, and there is no evidence it was renewed or extended. Plaintiff's case bottomed upon interference with a valid contract must fail, because there is no evidence of any interference before April 1, and after that date it had no contract.

Nor do we think there is any sufficient evidence of any intent or design on the part of the defendants to cause a breach of the contract at anytime. The plaintiff correctly says that a conspiracy may be proved by circumstantial evidence. Shannon v. Gaar, supra, loc. cit. 233 Iowa 44, 6 N.W.2d 308, and cases cited. But we find nothing here from which a fair determination of a conspiracy might be made by a jury. The property was sold in July to defendant McGowan company, on terms which the plaintiff thinks were no better than those offered by Wenkstern.

They were different, and it was for the sellers to decide whether they thought them satisfactory.

In fact, we think the good faith of the sellers was indicated by the fact they were willing to meet to consider Wenkstern's offer after the listing had expired; and were then willing to give him 30 days to submit another bid. They could have refused to meet; or at the time of the meeting, when Wenkstern's offer was some $56,000 below the listed price, they could have said to plaintiff "Your listing has expired; you have submitted no satisfactory offer; we will go no further with you." That they were willing to give the prospect found by plaintiff additional time was an indication of good faith rather than of a conspiracy to defeat their contract; a contract, as we have pointed out, which no longer existed.

Indeed, plaintiff's contentions in the two counts of its petition seem to meet each other head on, with disastrous results to each. It is claimed first that the listing agreement was at the meeting in White's office on April 8 extended for 30 days; while the second count relies upon a conspiracy to breach this contract and prevent plaintiff receiving its benefits. So it is contended that the sellers on April 8 extended the life of a contract which had otherwise expired by its express terms; while on the same date and at the same meeting they were conspiring with the other defendants to bring about a breach.

The need of any conspiracy on April 8 is not evident to our understanding. If the Schaefers wanted to be free of their contract with the plaintiff, they needed only to refuse to extend the agreement further, instead of entering into an involved conspiracy with the other defendants to defeat it. Why they should extend the life of the contract for 30 days and at the same time conspire to abrogate it unless they were interested in duplicity for duplicity's sake only, may be apparent to the plaintiff; it is not so to us. The presence of a non sequitur is strongly suspected. There was no sufficient evidence of interference with any existing contract.

III. There is considerable contention in the briefs, as there was before the trial court, concerning the liability of defendants Richard E. Schaefer and Shirley Mae Burke. Al-

though they were joint owners of the farm they did not sign the listing contract. The controversy here is as to whether Charles Schaefer and Frances Schaefer were authorized agents for the other two in executing the agreement. Since we find there was no liability on any of the defendants, we give this no further attention.

■ IV. The plaintiff has assigned no errors, as such. We call attention to Rule of Civil Procedure 344(a)(3) which provides that the appellant's opening brief shall contain, when the appeal presents questions of law, "a statement of errors relied on for reversal." We have assumed that the errors relied upon are those stated in the "Brief Points", under the third of which we find: "The Court erred in excluding evidence offered both as to Division I and Division II of the plaintiff's petition." The defendants have not raised the point of insufficiency of assigned errors, but have argued the merits of the questions presented by plaintiff's brief. We have likewise considered the substantial points raised, so far as plaintiff's real complaints could be determined.

However, an assigned error which merely asserts that the court erred in excluding evidence is clearly insufficient. It does not pinpoint the error, but leaves the court to search the entire record; a burden we are not called upon to and do not assume. In re Estate of Givens, 254 Iowa 1016, 1027, 119 N.W.2d 191, 197, and citations. So far as we can gather from the short argument plaintiff tenders under this division of its brief, its complaint is directed to the exclusion of evidence it thinks would have tended to show that Frances and Charles Schaefer were authorized agents for Richard Schaefer and Shirley Mae Burke in executing the listing agreement. Our discussion in previous divisions shows this was immaterial in any event, as pointed out in Division III above.

We must conclude the trial court properly directed verdicts upon each count of the petition. Plaintiff's counsel has labored diligently and earnestly in the vineyard; but the soil was unproductive.—Affirmed.

All JUSTICES concur.