**Alpha BLAIR, a Widow, Plaintiff,**

**and**

**Richard Blair, Plaintiff and Appellant,**

**v.**

**Larry BOULGER, Defendant and Appellee.**

**Civ. No. 10299.**

Supreme Court of North Dakota.

June 30, 1983.

Michael C. O'Neel, Fargo, for plaintiff and appellant.

John V. Boulger, of Solberg, Stewart, Boulger & Miller, Fargo, for defendant and appellee.

VANDE WALLE, Justice.

Richard Blair appealed from a judgment awarding Larry Boulger $2,500 compensatory damages and $5,000 exemplary damages for Blair's intentionally interfering with contractual relations between Boulger and Alpha Blair, Richard Blair's mother. We modify and affirm the judgment.

I

On January 8, 1974, Alpha Blair and her attorney met with Boulger to discuss the terms for the purchase by Boulger of a house owned by Mrs. Blair. The meeting took place at the office of Alpha's attorney and concluded with the execution of a contract for deed in which Mrs. Blair agreed to sell the house to Larry Boulger. A condition to the sale of the house was that Mrs. Boulger would continue to occupy the main floor of the house at a rental cost of $100 per month which would be offset against the monthly payments on the principal made by Boulger to Mrs. Blair.

Mrs. Blair's son Donald, who was present during preliminary negotiations between his mother and Boulger for the sale of the house, encouraged her to sell. According to the testimony of Mrs. Blair, Donald, and another son, Bruce, Richard was upset when he learned the house had been sold. Richard's testimony is that he was not upset. Nevertheless, on June 10, 1974, several

months after performance on the contract for deed had begun, Mrs. Blair executed a warranty deed, subject to the contract for deed, conveying to herself and Richard as joint tenants whatever interest she then had in the house.

A few months later, Richard, purportedly acting in his mother's behalf, called Boulger and said his mother wished to repurchase the house. Following an unfavorable response from Boulger, Richard, again purportedly acting at his mother's request, contacted an attorney to assist Mrs. Blair and Richard in getting the contract set aside.

The Blairs' attorney sent several letters to Boulger stating a number of bases for rescinding the contract. Boulger's attorney replied that the Blairs' claims were without merit and that Boulger considered Richard's conduct to constitute intentional interference with the contract between himself and Richard's mother. Richard later acknowledged he had received copies of the letters from Boulger's attorney.

The next correspondence between the parties was a letter from Boulger to Richard Blair in which he demanded rent from Blair for the periods of time Richard lived with his mother after the sale of the house. In consequence, Richard and his mother instituted an action against Boulger to have the contract for deed cancelled. They claimed that Boulger induced Mrs. Blair to enter into the contract by fraudulently representing that Richard could occupy the first-floor apartment with his mother at no additional expense. Boulger counterclaimed, alleging (1) Richard owed Boulger rent for the time he lived with his mother after execution of the contract for deed; (2) Richard intentionally interfered with rights under the contract between Boulger and Mrs. Blair; and (3) Mrs. Blair, and Richard, breached the contract for deed. A trial to the court was set for February 20, 1980.

Prior to the commencement of trial, Richard Blair moved to have the complaint dismissed without prejudice. Mrs. Blair joined Richard in the motion. The court denied the motion, whereupon Richard and Mrs. Blair sought to have their complaint dismissed with prejudice. They were aware that if the court granted the motion it would amount to a determination that there were no fraudulent representations made by Boulger to Mrs. Blair which induced her to enter into the contract for the sale of her house. The court granted the motion, and the trial proceeded on Boulger's counterclaim.

In its memorandum opinion following trial, the court (1) dismissed the first count of the counterclaim for back rent, (2) found on the second count that Richard Blair had intentionally and maliciously interfered with the contractual relations between Boulger and Mrs. Blair, for which the court awarded Boulger $2,500 compensatory damages and $5,000 exemplary damages, and (3) found on the third count that Mrs. Blair had breached the contract with Boulger but awarded no damages. Blair appealed only from the trial court's decision on the second count of the counterclaim.

## II

Blair contends that the court's award of $2,500 as compensatory damages represents compensation for attorney fees and, as such, is improper. He cites our decision in *Hoge v. Burleigh Cty. Water Management Dist.*, 311 N.W.2d 23, 31 (N.D.1981), for the general rule:

"[I]n the absence of any contractual or statutory liability, attorneys' fees incurred by a plaintiff in the litigation of his claim are not recoverable as an item of damages, either in an action ex contractu or an action ex delicto."

Boulger counter-argues that the $2,500 awarded as damages does not necessarily represent an award of attorney fees, and even if it does, the award is proper under an exception to the general rule cited above. The exception, sometimes called the "third party" exception, states that where the wrongful acts of one party, (A), cause another, (B), to bring or defend an action against a third party, (C), then (B) in a later action against (A) may recover the costs of litigation, including attorney fees, incurred by (B) in bringing or defending the earlier

action against (C) which was the direct result of (A)'s wrongful act. E.g., *Campus Sweater & Sportswear v. M.B. Kahn Const.*, 515 F.Supp. 64 (D.S.C.1979); *Roberts v. Ball, Hunt, Hart, Brown & Baerwitz*, 57 Cal.App.3d 104, 128 Cal.Rptr. 901 (1976); *Warren v. McLouth Steel Corp.*, 111 Mich. App. 496, 314 N.W.2d 666 (1981).

Blair's response to this argument is that whether or not North Dakota recognizes a third-party exception, the facts of this case do not satisfy the requirements of the exception because, first, there was not an earlier action, and, second, if there was an earlier action, it was not against a third party.

■ Blair is correct in his assertion that, generally, attorney fees may not be awarded as an element of damages in the absence of contractual or statutory authority. However, we believe that sound reasoning as well as sound judgment supports recognition of some form of the third-party exception. The formulation of the exception, relevant to the particular facts of this case, which we adopt occurs in Section 914 of 4 *Restatement of Torts* 2d, p. 492, and states:

> "(2) One who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for loss of time, attorney fees and other expenditures thereby suffered or incurred in the earlier action."

This statement, in conformity with the third-party exception, requires that the person seeking to recover attorney fees must have been forced to bring or defend an *earlier action* against a *third party*. Hence, we must examine the facts to determine whether or not these requirements are satisfied in the instant case. Contrary to Blair's contention, we decide they are.

According to Blair, because the proceeding in which Boulger defended against a third party was the *same* proceeding in which he sought to recover attorney fees from Blair through a counterclaim, the wrongful acts he allegedly committed did not cause Boulger to defend against a third

party in an *"earlier"* action. The principal distinction upon which this argument rests is between a present and a prior *proceeding.*

■ The critical distinction as we see it is not between present and prior proceedings, but rather between litigation against a third party caused by the wrongful acts of another and litigation against the wrongdoer to recover attorney fees for having to defend against a third party. So long as the wrongful acts of a person cause another to become involved in litigation with a third party, the expense of litigating against the third party may be recovered from the wrongdoer who caused the litigation regardless of whether the action to recover attorney fees is brought in the same proceeding or in a subsequent proceeding. E.g., *Warren, supra,* 314 N.W.2d at 672. But cf. *G & D Co. v. Durand Milling Co., Inc.,* 67 Mich.App. 253, 240 N.W.2d 765 (1976).

■ Expenses incurred in litigation with the wrongdoer to recover attorney fees for having to litigate against a third party are not recoverable, however. Thus in a claim by (A) to recover from (B) expenses incurred in an earlier action, the earlier action which (A) was forced to bring or defend cannot have been against (B), the wrongful party. *Dassance v. Nienhuis,* 57 Mich.App. 422, 225 N.W.2d 789 (1975). The reason usually given for requiring the earlier action to be against a third party is that permitting (A) to recover from (B) expenses of litigation incurred in an earlier action against (B) may discourage the legitimate use of the courts to resolve controversies. See D. Dobbs, *Handbook on the Law of Remedies,* § 3.8, p. 201. Provided that a claim or defense of a losing party is not frivolous, the prevailing party in a lawsuit should not be allowed to recover attorney fees resulting from litigation against the losing party. See Sec. 28–26–01, N.D.C.C.; see also *Dobbs, supra,* at 201.

Blair maintains that since he was a party to the original action brought against Boulger, the requirement of the third-party ex-

ception that the earlier action be one against a third party is not satisfied.

Blair's name appeared with his mother's on the complaint against Boulger, but the question whether or not he was a proper party to the action never was resolved by the trial court because the Blairs moved to dismiss their complaint with prejudice.

The complaint in question sought relief from Boulger for allegedly fraudulently inducing Alpha Blair to enter into the contract for deed. Richard Blair was not a party to the contract, nor did he acquire an interest in any of the proceeds his mother was to receive under the terms of the contract by the "interest" she conveyed to him on June 10, 1974. While Alpha Blair is alive, Richard has no independent, actionable interest to support a lawsuit against Boulger for misrepresentation of facts in the formation of the contract for deed between his mother and Boulger. If Richard had not interfered with the contractual relation between his mother and Boulger, the action against Boulger in all likelihood never would have arisen.

In its findings of fact, conclusions of law, and order for judgment, the trial court specially found that "the lawsuit [against Boulger] was instituted at the specific request of Plaintiff Richard Blair and Plaintiff Richard Blair agreed to pay the legal costs of such action."

■ A correct application of the third-party exception to the facts as determined by the trial court leads us to the conclusion that but for Richard's wrongful act of interference, the action for fraudulent representation would not have been brought against Boulger, and Boulger would not have had to defend against Mrs. Blair, a third party, who was the real party in interest. Consequently, Boulger is entitled to recover attorney fees for defending against the claim for relief instituted by the Blairs; he is not, however, entitled to recover attorney fees for litigating his counterclaim against Alpha and Richard Blair.

■ Whether the court's award of $2,500 as compensating damages was intended to represent attorney fees or actual damages, there is sufficient evidence in the record to support the award under either interpretation of the court's intention.

■ This determination forecloses discussion of Blair's next issue, which is "Whether the failure to prove actual damages precludes allowing punitive damages." Although it is true that an award of punitive damages is improper in the absence of an award of actual compensatory damages [*Riebe v. Riebe*, 252 N.W.2d 175 (N.D. 1977)], because we have decided that actual damages have been satisfactorily proved, Blair's question as to the propriety of awarding punitive damages no longer exists. See Sec. 32–03–07, N.D.C.C.

### III

The final two issues we consider are:

(1) Whether or not the trial court's determination that Blair's acts of interference were without justification is clearly erroneous; and

(2) Whether or not the provision in the judgment and decree giving interest on the damages award before the date of the entry of judgment is improper.

In our consideration of the first of these issues, we note that the concept of "justification" is not clearly defined in the law of interference with contractual relations. See *Seven D. Enterprises Ltd. v. Fonzi*, 438 F.Supp. 161 (E.D.Mich.1977); 45 Am.Jur.2d, *Interference*, § 27. Yet it is generally conceded that the motive of the defendant in interfering with contractual relations is highly determinative of the issue whether or not his actions were without justification. See *Stephenson v. Plastics Corporation of America*, 276 Minn. 400, 150 N.W.2d 668 (1967); W. Prosser, 2 *Restatement of Torts* 2d, 4th Ed., § 129, pp. 942–943; 45 Am.Jur.2d, *Interference*, § 28.

■ We adopt the view that where interference with contractual rights is done for the indirect purpose of injuring the plaintiff or benefiting the defendant at the plaintiff's expense, it is unjustifiable. *Sev-*

*en D., supra,* 438 F.Supp. at 163; *Stephenson, supra,* 150 N.W.2d at 680.

 With respect to Blair's actions, the trial court determined that

(1) Blair was acting in his own interest to benefit himself at Boulger's expense;

(2) Blair intended to directly or indirectly injure Boulger; and

(3) Blair's actions were (i) not in good faith, (ii) with malice, and (iii) without justification.

Whether or not interference with contractual relations is justified is basically a question of fact [*Seven D., supra,* 438 F.Supp. at 163; *Bennett v. Storz Broadcasting Co.,* 270 Minn. 525, 134 N.W.2d 892 (1965)], and the trial court's resolution of the question will not be set aside unless it is clearly erroneous [Rule 52(a), N.D.R.Civ.P.]. Consequently, we will not reverse the trial court's finding that Blair's actions were without justification unless we are definitely and firmly convinced that the trial court made a mistake. E.g., *McGuire v. Gaffney,* 314 N.W.2d 851 (N.D.1982). Our review of the record reveals adequate evidence to support the trial court's finding; accordingly, it is affirmed.

 Blair's final argument is that the judgment and decree incorrectly permits Boulger to receive interest on the judgment of $8,463.25 from January 29, 1982, the date of the memorandum opinion, rather than from August 25, 1982, which is the date judgment was entered.

Blair accurately points out that the trial court did not grant interest on damages in its memorandum opinion nor in the findings of fact, conclusions of law, and order for judgment. The award of interest appears for the first time in the judgment and decree, which was not signed by the trial court judge but by the clerk of the district court. Nowhere in the record do we find a manifestation of the trial court's intention to award interest from the date of the memorandum opinion.

In *Braaten v. Grabinski,* 77 N.D. 422, 43 N.W.2d 381, 384 (N.D.1950), a case in which the trial court awarded $350 damages, but the clerk of court in entering judgment included interest on the damages, this court held:

"[A] judgment must be supported by and conform to the decision with respect to the allowance of interest."

In the present case, because the judgment in specifying that interest is to be paid on damages from January 29, 1982, does not conform to the memorandum opinion or findings of fact, conclusions of law, and order for judgment, we modify the judgment to eliminate interest on the damages awarded from January 29, 1982. As a consequence, interest on the $8,463.25 shall be payable from the date the judgment was entered, i.e., August 25, 1982. See Sec. 28–20–34, N.D.C.C.

For the reasons given, the judgment is affirmed as modified.

ERICKSTAD, C.J., and PEDERSON, SAND and PAULSON, JJ., concur.