**Stanley HENNUM, Plaintiff, Appellant and Cross-Appellee,**

v.

**CITY OF MEDINA, Mayor Ernest Moser, individually and in his official capacity as Mayor, Defendants, Appellees and Cross-Appellants.**

Civ. No. 11352.

Supreme Court of North Dakota.

March 2, 1987.

Dietz & Little, Bismarck, for plaintiff, appellant and cross-appellee; argued by Kathryn L. Dietz, appearance by Stephen D. Little.

Fleck, Mather, Strutz & Mayer, Bismarck, for defendants, appellees and cross-appellants; argued by Daniel L. Hovland.

ERICKSTAD, Chief Justice.

Stanley Hennum appeals from the judgment of the district court limiting his recovery of damages for breach of an employment contract against the City of Medina, and limiting his recovery of damages for tortious interference with contract against the mayor of Medina, Ernest Moser. Hennum also appeals the district court's dismissal of his claim for relief under 42 U.S.C. § 1983 against Mayor Moser for terminating his employment without due process.

Mayor Moser and the City of Medina cross-appeal from the judgment of the district court finding that Mayor Moser terminated Hennum's employment without authority, and Mayor Moser further cross-appeals from the district court's judgment that he had committed the tort of intentional interference with contract when he terminated Hennum's employment on February 25, 1985. We affirm that part of the district court's judgment relating to contractual damages, breach of contract, and dismissal of the federal constitutional claim; however, we reverse that part of the district court's judgment holding that justification for the dismissal was immaterial in conjunction with the commission of the tort of intentional interference with contractual relations.

On July 14, 1980, Hennum was employed by action of the Medina City Council as the city maintenance person. On February 28, 1985, Mayor Moser terminated Hennum's employment with the city. The Medina City Council passed a motion affirming Mayor Moser's termination of Hennum's employment on April 27, 1985.

On April 2, 1985, Hennum commenced an action against the city and Mayor Moser for damages resulting from his termination

as a city employee. In his complaint Hennum alleged several claims for relief which included violations of his right to privacy, breach of contract, deprivation of due process, age discrimination, and tortious interference with contractual relations. Hennum prayed for general damages in the amount of $100,000 and punitive damages in the amount of $150,000.

On April 30, 1985, the mayor and city council served an answer alleging, *inter alia*, that Hennum's employment was terminated effective February 28, 1985; that he was without a written contract or job description; that he performed general duties relative to maintaining the city water and sewer system, city streets, city laundromat, and other duties requested by the mayor and city council; that he was employed at will and his employment was subject to termination with or without cause; and that he was treated fairly and in good faith by the mayor and city council.

On September 23, 1985, the mayor and city council moved for summary judgment. Hennum moved for partial summary judgment on October 3, 1985. On October 17, 1985, the district court entered an order dismissing Hennum's claim for relief for age discrimination and denied the motions for summary judgment as to the remaining issues.

On March 12, 1986, a stipulation of partial dismissal[1] was entered into by the parties. In the stipulation Hennum agreed that he was an at will employee and elected not to pursue his claim for breach of an implied covenant of good faith and fair dealing; however, he continued to assert his claims for breach of contract, deprivation of due process, and tortious interference with contractual relations. Hennum again moved for partial summary judgment on March 24, 1986.

On June 13, 1986, the district court issued a memorandum opinion, granting partial summary judgment to Hennum. The district court concluded that there had been a breach of the employment contract on February 28, 1985, when Hennum's employment was terminated by Mayor Moser; however, the court also concluded that the Medina City Council's action ratified and affirmed the termination and became effective on April 27, 1985, the date of the passage of the motion ratifying and affirming the termination by the mayor. The district court further concluded that Hennum had established a cause of action in tort for intentional interference with contractual relations against Moser because of his unauthorized termination of Hennum's employment on February 28, 1985; however, the court left open the determination of the claim as to damages for that tort. The district court finally concluded that Hennum was, by stipulation of the parties, an at will employee not entitled to federal constitutional due process. An order granting partial summary judgment was accordingly entered on July 23, 1986.

On August 27, 1986, the district court issued its memorandum opinion and order that incorporated the earlier orders, and awarded damages for breach of contract to Hennum for $1,620.00, an amount that rep-

---

**1.** The stipulation of partial dismissal states:

"1. In accordance with portions of the Breach of Contract (Second Cause of Action) and Fifth and Fourteenth Amendment (Third Cause of Action) allegations pled, the plaintiff continues to claim that his employment contract with the City of Medina was breached by the City of Medina when Mayor Ernest Moser terminated the plaintiff's employment with the city although he lacked the legal authority to do so; and that such breach violated the plaintiff's federal constitutional rights under the Fifth and Fourteenth Amendments. The plaintiff does not assert that 'cause' was required for the City of Medina, acting through the Medina City Council, to terminate his em-

ployment contract. Further the plaintiff does not assert that the defendants' wrongfully breached an implied covenant of good faith and fair dealing. *See* complaint paragraphs 18–19. Therefore, the parties agree that such claims are dismissed.

"2. In accordance with the Tortious Interference with Contract (Fifth Cause of Action) allegation pled, the plaintiff continues to assert that Mayor Ernest Moser induced or otherwise caused the City of Medina to breach its employment contract with the plaintiff and that, but for defendant Moser's actions, the employment contract would not have been breached."

resents Hennum's salary for approximately one and one-half months.

On September 11, 1986, the district court ordered judgment and concluded, in part:

"1. Defendant Mayor Ernest Moser's termination of the plaintiff's employment contract on February 28, 1985, was without legal authority and the Medina City Council's inaction with respect to the plaintiff's termination breached the employment contract between the City of Medina and the plaintiff.

"2. That the Medina City Council's resolution of April 27, 1985, affirming the termination of the plaintiff is effective only prospectively from the date of the resolution, i.e., April 27, 1985. As a result, damages for such breach of contract are limited to that period of time between on or about February 28, 1985, to April 27, 1985.

"3. That the plaintiff's cause of action for a violation of his federal constitutional rights under the Fifth and Fourteenth Amendments is dismissed. The plaintiff has no property interest in his employment that would entitle him to notice of the reasons of his discharge and an opportunity to respond before he could be deprived of that property interest.

"4. That the defendant Mayor Ernest Moser has, as a matter of law, committed the tort of intentional interference with contract as a result of his actions taken on February 28, 1985, to terminate the plaintiff. The defendant tortiously interfered with the plaintiff's employment contract with the City of Medina in that:

(a) there was a valid contractual employment relationship between the City of Medina and the plaintiff;

(b) the defendant Mayor Moser had knowledge of the contractual employment relationship;

(c) defendant Mayor Moser intentionally interfered by inducing or causing a breach of the contractual employment relationship; and

(d) there were resulting damages.

"5. That mistake or good faith on the part of defendant Mayor Ernest Moser as to the propriety of his act of tortious interference with contract is not relevant and proper for consideration by the jury.

"6. The plaintiff is awarded damages against the defendant City of Medina in the amount of $1,620 as lost wages for breach of contract, representing one and one-half months' salary and no offset for other income earned by the plaintiff from the date of termination until April 27, 1985.

"7. The effective period for the recovery of damages for the tort of intentional interference with contract by defendant Mayor Ernest Moser is for that period of time on or about February 28, 1985, to April 27, 1985."

Both parties appeal from the judgment and raise the following issues:

## I

Whether or not the district court erred in concluding that Mayor Moser's termination of Hennum's employment was without legal authority.

## II

Whether or not the district court correctly limited Hennum's damages for breach of contract to that period of time between February 28, 1985, and April 27, 1985.

## III

Whether or not the district court erred by dismissing Hennum's cause of action alleging due process violations for failing to state a claim upon which relief can be granted.

## IV

Whether or not the district court erred in concluding that Mayor Moser committed the tort of intentional inference with contractual relations by terminating Hennum's employment on February 28, 1985.

■ The first issue is whether or not Mayor Moser has authority expressly or

impliedly conferred upon him by ordinance or by applicable law or by the Medina City Council to terminate Hennum's employment as the city maintenance person. The general rule is that:

"[t]he powers and duties of the mayor or chief executive rest almost entirely upon the proper construction of the charter and the ordinances or bylaws and municipal regulations passed in pursuance of such authority. He has no authority, except what is expressly or impliedly conferred upon him by the charter or applicable law, or by the council or governing legislative body acting within the scope of the law." [Footnotes omitted.] 3 McQuillin, Municipal Corporations § 12.43 (3d ed. 1982).

The City of Medina has a specific ordinance [2] which governs the appointment of officers to the city that was adopted pursuant to Section 40–0819, R.C. 1943, predecessor to Section 40–08–19, N.D.C.C. The or-dinance provides in section one that "the Mayor shall appoint and submit to the City Council for approval and confirmation, the following officers: City Auditor, City Assessor, City Attorney, City Engineer, and such other officers as may by the City Council be deemed necessary or expedient." Section one of the ordinance also provides that "[a] certificate of appointment shall be issued to each of such duly appointed officers." Section two of the ordinance provides that "[a]ny officer appointed by the Mayor may be removed by the Mayor as provided by Chapter 40–0819 of the Revised Code of 1943."

Chapter 40–08, N.D.C.C., does not specifically set forth the powers of the mayor with respect to the hiring and firing of city employees; however, Section 40–08–19, N.D.C.C., provides that "[t]he mayor may remove *any officer* appointed by him whenever he is of the opinion that the interests

---

**2.** "CHAPTER IV. APPOINTIVE OFFICERS

"Sec 1. APPOINTIVE OFFICERS. No person shall be eligible to hold any office by appointment unless he is a citizen of the United States; nor shall any person be eligible to any office who is a defaulter to the corporation. At the first regular meeting of the City Council after the biennial election for aldermen, or within a reasonable time thereafter, the Mayor shall appoint and submit to the City Council for approval and confirmation, the following officers: City Auditor, City Assessor, City Attorney, City Engineer, and such other officers as may by the City Council be deemed necessary or expedient; and at the first meeting of the City Council in September in each odd numbered year a City Assessor; and at the first meeting of the City Council in April of each odd numbered year a Board of Health consisting of a City Health Officer, who shall be a competent Physician in regular practice, and four Aldermen, who together with the City Engineer shall constitute a Board of Health, and as such shall have and exercise the powers conferred by law. In case of a failure of the City Council to confirm any such appointment, the Mayor shall immediately make another appointment to be acted upon in like manner by the City Council and shall so proceed until all of such offices are filled. An appointee twice rejected by the City Council cannot a third time be appointed by the Mayor. A certificate of appointment shall be issued to each of such duly appointed officers as provided by Chapter 40–14 of the Revised Code of 1943.

"Such officers shall perform the duties prescribed by the statutes of North Dakota and by the ordinances of this city and by the rules and regulations which may from time to time be prescribed by the Mayor and City Council.

"Sec 2. REMOVAL OF APPOINTIVE OFFICERS. Any officer appointed by the Mayor may be removed by the Mayor as provided by Chapter 40–0819 of the Revised Code of 1943. At the next regular meeting of the Council after the removal of any officer, the Mayor shall submit to the Council his reason in writing for the removal of said officer, and his appointment of a successor, whereupon the Council shall proceed to ballot on the appointment as in the case of an original appointment as heretofore provided. In case of a vacancy from any other cause, it shall be filled in like manner as an original appointment.

"Sec 3. TERM OF OFFICE. Subject to the power of removal as provided by Chapter 40–0819 of the Revised Code of 1943, the term of office of each appointive officer shall be a period of two years from the date of such appointment as provided by Chapter 40–1405 of the Revised Code of 1943, except that where an appointment is made to fill out a vacancy, it shall be for the remainder of such unexpired term. In each case such officer is to hold office until his successor is appointed and qualified. Any appointive officer shall take the oath and file a bond as provided by Chapter 40–1303 of the Revised Code of 1943." See Ordinances of the City of Medina, Chapter IV, Sec. 1.

of the city demand such removal." [Emphasis added.]

■ The term "officer" is not defined in Chapter 40–08, N.D.C.C. We note, however, that the Legislature has authorized the city manager in a city manager plan of government with the authority to remove officers and employees of the city in Section 40–10–06(4), N.D.C.C.[3] We further note that Hennum was apparently hired pursuant to the general power of municipalities "[t]o contract and be contracted with." Section 40–05–01(73), N.D.C.C. *See also* Section 40–01–02, N.D.C.C.

The distinction between a municipal officer and employee is explained in *Christopher v. City of Fairmont*, 280 S.E.2d 284. (W.Va.1981), where the court said:

"We have recognized that there is a legal distinction between a 'public officer' and a 'public employee' and that: 'As a general rule it may be stated that a position is a public office when it is created by law, with duties cast on the incumbent which involve an exercise of some portion of the sovereign power and in the performance of which the public is concerned, and which are continuing in their nature and not occasional or intermittent. But one who merely performs the duties required of him by persons employing him under an express or implied contract, though such persons themselves be public officers, and though the employment be in or about public work or business, is a mere employee.' *State ex rel. Key v. Bond*, 94 W.Va. 255, 260, 118 S.E. 276, 279 (1923).

"We have also stated:

'Among the criteria to be considered in determining whether a position is an office or a mere employment are whether the position was created by law; whether the position was designated as an office; whether the qualifications of the appointee have been prescribed; whether the duties, tenure, salary, bond and oath have been prescribed or required; and whether the one occupying the position has been constituted a representative of the sovereign.' Syl. pt. 5, *State ex rel. Carson v. Wood*, 154 W.Va. 397, 175 S.E.2d 482 (1970)." 280 S.E.2d at 285. *See also* 62 C.J.S. Municipal Corporations § 463 (1949).

■ Hennum was hired by the City of Medina by action of the City Council on June 30, 1980, as the city maintenance person.[4] He was hired without a written con-

---

3. Section 40–10–06(4), N.D.C.C., reads as follows:

"*Duties of city manager.* The city manager shall have the following duties:

\*   \*   \*   \*   \*   \*

"4. He shall appoint and remove, subject to civil service regulations if in effect, all heads of administrative departments and employees of the city; provided, however, he shall neither appoint nor remove the head of any department without first consulting with the governing body."

This discloses that the Legislature knew how to authorize the removal of employees as well as officers. The fact that the Legislature used only the term officer in Section 40–08–19, N.D.C.C., indicates that the Legislature meant to restrict the authority therein granted to the removal of officers only.

4. Minutes of the Special Meeting dated June 30, 1980, read:

"A Special meeting was called to order by the Honorable Curtiss Mayhew, for the purpose of hiring a new maintaince [sic] man for the City of Medina.

"MEMBERS PRESENT: MAYOR CURTISS MAYHEW. "ALDERMEN: EMIL SAM, GILBERT EVERDING AND ERNEST MOSER. "ABSENT: ORVILLE NYE.

"The meeting was called to order by the Honorable Mayor Curtiss Mayhew for the purpose of hiring a new man for the maintance [sic] of the City.

"The following persons were present for the interview. Greg Moser, Adolph Moser, Maynard Link, Rocky Ruele, and Stan Hennum and Duane Smith.

"Interviewed Maynard Link   $  725.00
            Greg Moser        1000.00
            Rocky Reule         950.00
            Duane Smith      salary open
            Adolph Moser        950.00
            Stan Hennum         880.00

"Mr Hennum was called back in and his salary was discussed and after talking to Mr Hennum it was agreed at $825.00 a month with a raise in six months of $50.00 Mr Hennum would like to give his employer notice of two weeks. Mr Hennum would be starting July 14, 1980. Aldermen [sic] Ernest Moser made a motion to hire Mr. Hennum, this was seconded by Alderman Gilbert Everding. VOTING IN FAVOR FOR MR HENNUM. ALDERMAN ERNEST MOSER AYE. EMIL SAM AYE GILBERT EVERDING AYE."

tract or job description and he performed general duties relative to maintaining the city water and sewer system, city streets, and the city laundromat. He was apparently directed and supervised by the mayor and city council in the performance of these duties.

The district court concluded "that Hennum was not an officer within the meaning of the law of the State of North Dakota or the City Ordinances of the City of Medina." We agree.

Hennum, as city maintenance person, clearly does not meet the criteria to be classified as an officer articulated in *Christopher*, 280 S.E.2d at 285. The city maintenance person is not a position created by law involving the exercise of sovereign power. Hennum, as city maintenance person, appropriately fits the description of an employee as "one who merely performs the duties required of him by persons employing him under an express or implied contract." The city ordinance does not expressly authorize the mayor to remove city employees.[5]

■ We conclude that Mayor Moser was without lawful authority to terminate Hennum's employment without council approval because such authority was not expressly or impliedly conferred upon the mayor by applicable law or by the council.

The second issue is whether or not the district court correctly limited Hennum's damages for breach of contract to that period of time between February 28, 1985, the date that Mayor Moser terminated Hennum's employment, and April 27, 1985, the date the city council by vote approved the action of the mayor.

The general rule is that "a governmental body may effectively ratify what it could previously have lawfully authorized." 4 McQuillin, Municipal Corporations § 13.47 (3d ed. 1985). *See also* 62 C.J.S. Municipal

Corporations § 542 (1949) ("A municipal corporation may ratify the unauthorized acts of its officers where such acts are within the scope of the corporate powers, but not otherwise.").

Hennum argues that "it is certainly questionable whether a city governing body can ever ratify an unlawful act of a city official" and relies upon 4 McQuillin, Municipal Corporations, § 13.47 (3d ed. 1985), which reads in part as follows:

"There can be no legal confirmation or ratification of ultra vires acts, nor of acts under a void law. So, where the charter conferred exclusive power upon the council to execute the particular act, and it was performed by an officer, the act cannot be legally ratified."

While it may be true that a municipal corporation cannot ratify ultra vires acts, *State ex rel. Gaski v. Basile*, 174 Conn. 36, 381 A.2d 547, 549 (1977), courts normally draw a distinction between acts which are absolutely *ultra vires* because the subject matter is completely beyond the scope of the municipal corporation's powers and those acts which might be considered only in some sense *ultra vires* where the governmental body has jurisdiction of the subject matter. *State v. Greenway*, 15 Wash. App. 216, 547 P.2d 1231 (1976); 63 C.J.S. Municipal Corporations § 761 (1950).

■ In this case, Mayor Moser's termination of the employment of Hennum was *ultra vires*, but the termination would not have been *ultra vires* if done by the council. The city council could, by action taken at a duly convened meeting, ratify Mayor Moser's unauthorized termination of Hennum's employment because it was within the municipal corporation's authority to remove him. As Hennum was an at will employee, as stipulated by the parties, the action by the city council on April 27, 1985,[6]

---

5. This does not mean that the Medina City Council could not authorize the mayor to remove a city employee without approval of the council, but that to date the council has not acted to do so.

6. *The minutes of the Medina City Council read:*

"Medina, North Dakota 58467
April 27, 1985
"On motion made by Alderman Orville Nye and seconded by Alerman Ross Headland, to affirm the termination of Stanley Hennum, as maintenance engineer for the City of Medina,

was sufficient and effective to terminate Hennum's employment as of that date. *See Sanchez v. City of Belen,* 98 N.M. 57, 644 P.2d 1046 (App.1982) ("Even if the city manager's discharge had been invalid under his statutory authority, the action by the city council unanimously ratifying that discharge was sufficient by itself to terminate Sanchez' employment.").

This Court has recognized that a city governing body can take appropriate action to ratify an earlier void act. *See State ex rel. Ness v. Board of City Com'rs of City of Fargo,* 63 N.D. 33, 245 N.W. 887 (1932), and the companion cases of *State ex rel. Ness v. Board of Com'rs of City of Fargo,* 63 N.D. 85, 246 N.W. 243 (1933), and *Ness v. City of Fargo,* 64 N.D. 231, 251 N.W. 843 (1933).

In *Ness,* 245 N.W. 887, the city commission removed Ness as city assessor without complying with the existing statutory procedures for the removal of city officers. In 1931, the city commission could not, as prescribed by statute, remove a person appointed to office unless there was cause for the officer's removal and an opportunity for the officer to be heard. *See* Section 3808, N.D.Comp.L. (1913).[7] In *Ness,* 245 N.W. 887, the statutory removal procedures had not been followed by the city commission and this Court affirmed the district court's conclusion that the removal of Ness from his office as city assessor was void. 245 N.W. at 892.

After *Ness,* 245 N.W. 887, the city commission again proceeded against Ness to remove him from office; however, in the second proceeding the commission complied with statutory procedure and issued an order removing Ness from office. *Ness,* 246 N.W. 243. In *Ness,* 246 N.W. at 244, this Court affirmed the validity of the second proceeding and upheld the order of removal issued by the city commission.

Thereafter, Ness commenced a third lawsuit to recover his salary during the period of time that he had been wrongfully dismissed from his office. *Ness,* 251 N.W. 843. In *Ness,* 251 N.W. at 845, this Court concluded that Ness could recover his salary from the city for the period of time between his wrongful dismissal and subsequent lawful dismissal. *See generally Frain v. City of Saint Paul,* 261 Minn. 409, 112 N.W.2d 795, 796–97 (1962) (A city employee who had been wrongfully demoted "would be entitled to payment of his back salary as foreman as well as continuing compensation in that capacity until such time as he was incapable of performing his duties, was demoted through lawful procedures, or voluntarily resigned."); *City of Tarpon Springs v. State ex rel. Meister,* 392 So.2d 1345 (Fla.App.1980); 4 McQuillin, Municipal Corporations § 12.-184b (1985).

■ Accordingly, the district court correctly limited Hennum's damages for breach of contract to that period of time between his dismissal by Moser on February 28, 1985, and April 27, 1985, the date of the city council's action affirming the mayor's unauthorized dismissal.

The third issue is whether or not the district court properly concluded that Hennum's third cause of action alleging due process violations failed to state a claim upon which relief can be granted.

The due process clause of the United States Constitution "provides that certain

---

effectine [sic] February 28, 1985. Motion carried on Aye vote.
"ROLL CALL:
Vernon Heinle Aye /s/
Orville Nye Aye /s/
Ross Headland Aye /s/
Betty Ustanko Aye /s/"

7. Section 3808, N.D.Comp.L. (1913) provided as follows:
"Every person appointed to any office may be removed therefrom by a majority of votes of all the members of the board of city commis-

sioners, but no such officer shall be removed except for cause nor unless charges are preferred against him and an opportunity given him to be heard in his defense. The board of city commissioners may compel the attendance of witnesses and the production of papers when necessary for the purpose of such hearing, and shall proceed within ten days after the charges are filed with the city auditor to hear and determine the case upon its merits."

substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.3d 494 (1985). In *Loudermill* 470 U.S. at 542, 105 S.Ct. at 1493, a majority of the United States Supreme Court said:

"An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.' *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950). We have described 'the root requirement' of the Due Process Clause as being 'that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest.' *Boddie v. Connecticut*, 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971) (emphasis in original); *see Bell v. Burson*, 402 U.S. 535, 542, 91 S.Ct. 1586, 1591, 29 L.Ed.2d 90 (1971). This principle requires 'some kind of a hearing' prior to the discharge of an employee who has a constitutionally protected property interest in his employment. *Board of Regents v. Roth*, 408 U.S. [564], at 569–570, 92 S.Ct. [2701], at 2705 [33 L.Ed.2d 548 (1972)]; *Perry v. Sinderman*, 408 U.S. 593, 599, 92 S.Ct. 2694, 2698, 33 L.Ed.2d 570 (1972)." [Footnote omitted.]

Thus the critical inquiry is whether or not Hennum "has a constitutionally protected property interest" that requires that he be given notice and "some kind of hearing" before being deprived of his employment.

Hennum must have more than a unilateral expectation of continued employment; he "must, instead, have a legitimate claim of entitlement to it." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 578, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). In *Roth*, 408 U.S. at 578, 92 S.Ct. at 2709, the United States Supreme Court described the creation of "property" rights as follows:

"Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."

We faced a similar constitutional issue in *Lee v. Walstad*, 368 N.W.2d 542, 546 (N.D. 1985). In *Lee* we determined that Lee, as chief of police and an at will employee, was not entitled to notice of the reasons for his discharge and an opportunity to respond before being deprived of his employment in the absence of legislative intent to confer a property interest in employment as chief of police. In *Lee*, 368 N.W.2d 546, we explained the significance between those hired at will and those who are given some protection as follows:

"The distinction between those positions in which the employee is given some protection and those 'at will' positions are significant because in a recent decision, *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.3d 494 (1985), a majority of the United States Supreme Court held that where a statute plainly supports the conclusion that an employee possesses a property right in continued employment, the Due Process Clause of the Fourteenth Amendment to the United States Constitution requires that before the employee may be denied that property right he must have notice and an opportunity to respond prior to a determination as to whether there are reasonable grounds to believe that the charges against the employee are true."

■ The district court correctly dismissed Hennum's cause of action for failing to state a claim upon which relief can be granted because Hennum, as an at will employee, does not have a constitutionally protected property interest, under the due process clauses of the United States Constitution, in continued employment upon which the requirement of notice and a hear-

**336**

ing are predicated, and he has not shown or even alleged that he was removed from his employment for other unconstitutional or unconscionable reasons.

The fourth issue is whether or not the district court correctly concluded that Mayor Moser had committed the tort of intentional interference with contractual relations as a result of his actions taken on February 28, 1985, in terminating Hennum's employment.

In *Bismarck Realty Co. v. Folden,* 354 N.W.2d 636, 642 (N.D.1984), we identified the elements of tortious interference with contractual relations as follows:

"In order to establish a prima facie case of tortious interference with contractual relations, the plaintiff must show that: (1) a contract existed; (2) the contract was breached; (3) the defendant instigated the breach; and (4) the defendant did so without justification. *Derosia v. Austin,* 115 Mich.App. 647, 321 N.W.2d 760 (1982). *See generally* Annot., 34 A.L. R.3d 720 (1970)."

In *Blair v. Boulger,* 336 N.W.2d 337, 341 (N.D.1983), *cert. denied,* 464 U.S. 995, 104 S.Ct. 491, 78 L.Ed.2d 685, *reh. denied,* 465 U.S. 1014, 104 S.Ct. 1018, 79 L.Ed.2d 247 (1984), noting the difficulty that courts have had with the concept of "justification" we commented:

"In our consideration of the first of these issues, we note that the concept of 'justification' is not clearly defined in the law of interference with contractual relations. *See Seven D. Enterprises Ltd. v. Fonzi,* 438 F.Supp. 161 (E.D.Mich.1977); 45 Am.Jur.2d, *Interference,* § 27. Yet it is generally conceded that the motive of the defendant in interfering with contractual relations is highly determinative of the issue whether or not his actions were without justification. *See Stephenson v. Plastics Corporation of America,* 276 Minn. 400, 150 N.W.2d 668 (1967); W. Prosser, 2 *Restatement of Torts* 2d, 4th Ed., § 129, pp. 942–943; 45 Am.Jur.2d, *Interference,* § 28."

In *Blair,* 336 N.W.2d at 342, we said that "[w]hether or not interference with con-

tractual relations is justified is basically a question of fact."

In this case, the district court concluded in its partial summary judgment that:

"The defendant [Mayor Moser] tortiously interfered with the plaintiff's employment contract with the City of Medina in that:

(a) there was a valid contractual employment relationship between the City of Medina and the plaintiff;

(b) the defendant Mayor Moser had knowledge of the contractual employment relationship;

(c) defendant Mayor Moser intentionally interfered by inducing or causing a breach of the contractual employment relationship; and

(d) there were resulting damages."

The district court also concluded that any mistake or good faith on the part of Mayor Moser as to the propriety of his actions was not relevant in the determination of tortious interference. The district court in its memorandum opinion reasoned:

"There can be no doubt that a valid contractual employment relationship existed between Medina and Hennum, and that Mayor Moser had knowledge of this contract. The intent element also appears to be satisfied. The standard of intent is that of the actor (Moser) doing an act with the knowledge that a harm was reasonably certain to be sustained by Hennum. See Restatement (Second) of Torts § 8A and § 766A comment e. Even if Moser's 'subjective intent' was not to interfere, but to exercise what he thought to be his valid authority to fire Hennum, this is not a proper inquiry. Mistake as to the propriety of the act is not relevant. The inquiry must focus on Moser's reasonable certainty of the result of his act (i.e. termination of Hennum's employment.) Intent is not determined by the mental state of the actor, but by the intended consequences of his act. *Ranson v. Kitner,* 31 Ill.App. 241 (1888)."

It is apparent from the district court's memorandum opinion that the court relied

upon, *Toney v. Casey's General Stores, Inc.*, 372 N.W.2d 220 (Iowa 1985), and *Westway Trading Corp. v. River Terminal Corp.*, 314 N.W.2d 398 (Iowa 1982), to support its conclusion.

The Iowa Supreme Court in *Toney, supra,* and *Westway Trading Corp, supra,* did not fully explain the elements of tortious interference with contractual relations apparently because that court had sufficiently discussed these elements in prior cases. *See Stoller Fisheries, Inc. v. American Title Ins. Co.,* 258 N.W.2d 336 (Iowa 1977); *Farmers Co-op Elevator, Inc. v. State Bank,* 236 N.W.2d 674 (Iowa 1975); *Clark v. Figge,* 181 N.W.2d 211 (Iowa 1970); *Iowa Securities Co. v. Schaefer,* 256 Iowa 219, 126 N.W.2d 922 (1964).

In *Toney*, 372 N.W.2d at 222, the Iowa Supreme Court held that an employee would be allowed to recover against a defendant inducing the breach of an employment contract even where the employment contract was terminable at will. The court relied in part upon *Prosser and Keeton on Torts* (5th ed. 1984) and the Restatement (Second) of Torts. The authors in *Prosser and Keeton on Torts* explain tortious interference with contractual relations in at will employment as follows:

"There is some authority to the contrary effect as to contracts which the promissor may terminate at will, on the theory that there is really nothing involved but an option on his part to perform or not. However, eminent legal writers to the contrary notwithstanding, the overwhelming majority of the cases have held that interference with employment or other contracts terminable at will is actionable, since until it is terminated the contract is a subsisting relation, of value to the plaintiff, and presumably to continue in effect. The possibility of termination does, however, bear upon the issue of damages sustained, and it must be taken into account in determining the defendant's privilege to interfere. Thus a contract at will is usually not protected when the defendant's interference with it is based on any legitimate business purpose and no improper means is used, as where one employer hires away employees of another whose contract rights are terminable at will. The principle would logically apply to any agreement that could not be enforced as a contract, since such an agreement can be avoided at will, as where a contract lacks mutuality. In all such cases the plaintiff's interest may be protected, but as a prospective advantage rather than as a contract, with correspondingly greater freedom of action on the defendant's part." [Footnotes omitted.] Prosser and Keeton on Torts § 129 (5th ed. 1984).

The Restatement takes a similar view. Section 766A of the Restatement (Second) of Torts (1979) states the rule for intentional interference with another's performance of his own contract as follows:

"One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person, by preventing the other from performing the contract or causing his performance to be more expensive or burdensome, is subject to liability to the other for the pecuniary loss resulting to him." [8]

Section 766A, comment d, notes that Section 766A applies to "contracts terminable at will." Section 766A, comment e, describes the necessary intent and purpose for intentional interference as follows:

"The intent required for this Section is that defined in § 8A. The interference with the other's performance of his contract is intentional if the actor desires to bring it about or if he knows that the interference is certain or substantially certain to occur as a result of his action. (See § 766, Comment *j*).

---

**8.** Moser, pursuant to Section 766A of the Restatement, argues that he does not qualify as a "third person." However, in the context of Section 766A the "third person" in this case is the City of Medina. In *Trimble v. City & County of Denver,* 697 P.2d 716 (Colo.1985), the Colorado Supreme Court makes it clear that the City of Medina is a third person.

"The interference, however, must also be improper. The factors to be considered in determining whether an interference is improper are stated in § 767. One of them is the actor's motive and another is the interest sought to be advanced by him. Together these factors mean that the actor's purpose is of substantial significance."

*See also Prosser and Keeton on Torts* § 129 (5th ed. 1984) ("[I]t is clear that liability is to be imposed only if the defendant intends to interfere with the plaintiff's contractual relations, at least in the sense that he acts with knowledge that interference will result, and if, in addition, he acts for an improper purpose."); *Guard-Life Corp. v. S. Parker Hardware Manufacturing Corp.*, 50 N.Y.2d 183, 428 N.Y.S.2d 628, 631, 406 N.E.2d 445, 448 (1980) ("The keystone of the statement is the adverb 'improperly.' ").

Section 767 of the Restatement lists the factors in determining whether or not interference is improper or as we have labeled in *Folden*, "without justification," as follows:

"In determining whether an actor's conduct in intentionally interfering with a contract or a prospective contractual relation of another is improper or not, consideration is given to the following factors:

(a) the nature of the actor's conduct,

(b) the actor's motive,

(c) the interests of the other with which the actor's conduct interferes,

(d) the interests sought to be advanced by the actor,

(e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,

(f) the proximity or remoteness of the actor's conduct to the interference and

(g) the relations between the parties."

Restatement (Second) of Torts § 767 (1979).

■ The district court, arriving at the conclusion that Moser intentionally interfered with Hennum's employment contract, relied apparently upon the basic tort principle of intent. However, the intent element in tortious interference with contractual relations requires greater culpability than is required under basic tort principles. The United States Court of Appeals for the Ninth Circuit explains this distinction in *DeVoto v. Pacific Fidelity Life Ins. Co.*, 618 F.2d 1340, 1347 (9th Cir.1980):

"Tort law ordinarily imputes to an actor the intention to cause the natural and probable consequences of his conduct. *See* Restatement (Second) of Torts § 8A (1965). If the case turned on the issue of defendants' intent in this sense of the term, we would say the trier of fact could find that the defendants had the necessary state of mind to harm the brokers, for they were aware of the brokers' business relation and knew its disruption was substantially certain to follow once the principal contract with American was abrogated.

"Tortious interference requires a state of mind and a purpose more culpable than 'intent' under the Restatement definition, however. The fact of a general intent to interfere, under a definition that includes imputed knowledge of consequences, does not alone suffice to impose liability. Inquiry into the motive or purpose of the actor is necessary. The inducement of a breach, therefore, does not always vest third or incidental persons with a tort action against the one who interfered. Where the actor's conduct is not criminal or fraudulent, and absent some other aggravating circumstances, it is necessary to identify those whom the actor had a specific motive or purpose to injure by his interference and to limit liability accordingly. The extent of liability, for this tort, is fixed in part by the motive or purpose of the actor. *See* Restatement (Second) of Torts § 766 & Comment j and § 767 & Comment d (1979)."

The affidavits of Mayor Moser and the members of the Medina City Council suggest that "Hennum was terminated because he failed to properly perform his duties and responsibilities concerning the

maintenance of the city water and sewer system, city streets, and other duties." Mayor Moser states in his affidavit "[t]hat, at all times in his dealings with Stanley Hennum he acted in good faith and it was his good faith belief and understanding that Stanley Hennum's job performance was sub-standard and that his termination was in the best interests of the City of Medina."

■ We believe that whether or not Mayor Moser acted in "good faith" and in the "best interests of the City of Medina" is relevant to the determination of tortious interference with contractual relations and thus the district court erred in excluding such evidence in conjunction with this issue.

As the district court did not give credence to the alleged fact that Mayor Moser was justified in terminating Hennum's employment, we reverse as to that issue and remand for determination of that issue.

If Moser is determined, however, on remand to have acted without justification in terminating Hennum's employment, the district court should then determine whether or not Moser is entitled to immunity as a public employee. The law of immunity of employees of political subdivisions is set forth in Section 32–12.1–03, N.D.C.C. *See also McLain v. Midway Township*, 326 N.W.2d 196 (N.D.1982). If this issue becomes material, the district court should allow Moser to pursue his claim of immunity.

Accordingly, we affirm that part of the judgment which awarded $1,620.00 against the city, reverse that part of the judgment which held that a tortious interference with contract occurred, and remand for further hearing as to justification for termination of contract and for determination of immunity if no justification for termination of contract existed.

LEVINE, J., and PEDERSON, Surrogate Justice, concur.

MESCHKE, J., concurs in the result.

PEDERSON, Surrogate Justice, sitting in place of GIERKE, J., disqualified.

VANDE WALLE, Justice, concurring specially.

I write separately to set forth what I understand to be the rationale for what otherwise might appear to be an opinion which reaches inconsistent and conflicting results. The majority opinion holds that Moser's act of dismissing Hennum was ultra vires. It further affirms the dismissal of the Federal constitutional claim and reverses that portion of the trial court's judgment which found that Moser tortiously interfered with Hennum's contract with the City and remands for further proceedings to determine whether or not Moser was justified in terminating Hennum's employment. The majority opinion affirms the award of damages to Hennum and against the City for breach of contract. It is the latter which may seem inconsistent, for if Moser was justified in terminating Hennum, how can there be a breach of contract? The answer apparently lies in the various causes of action, i.e., in tortious interference with contract the interference must be intentional and requires a greater culpability than is required under basic tort principles. *DeVoto v. Pacific Fidelity Life Ins. Co.*, 618 F.2d 1340 (9th Cir.1980).

Therefore, although the intent necessary to prove tortious interference with the contract is dependent upon Moser's justification for termination, Moser did not have the authority to terminate the contract insofar as the breach-of-contract action is concerned, and the City's liability under breach of contract arises as a result of the City's inaction with regard to Moser's termination of Hennum. Although this may appear to be a tort rather than contract cause of action, it is not discussed by the majority; but the issue of the City's liability with respect to the breach-of-contract action if Moser acted ultra vires was not raised nor briefed as a separate issue. I therefore concur in the result reached by the majority opinion.