# JOHNSON v. BARTRON.

(137 N. W. 1092.)

**Licenses — revocation — contract — compensation.**

1. Where A and B owned adjacent lots, and, together with C, a professional well digger, agreed to dig and equip a well on the line dividing said lots, in which all should equally share the expense and should equally participate, and said contract being reduced to writing and not being signed by any of said parties, and the location of said well was arrived at by rough measurements made by said parties, but the line was not then surveyed; and it was contemporaneously orally agreed that if the well was not on the true line, that the same rights in the well should exist, and that if C desired to sell his interest, A and B should have the first option to purchase the same in equal shares, and C did afterwards sell his interest to A and B; and after the digging of said well and the sale of the interest of C to A and B, A and B jointly constructed a windmill over said

Note.—The authorities on the revocability of a license to maintain burden on land after licensee has incurred expense are gathered in notes in 49 L.R.A. 497; 19 L.R.A. (N.S.) 700, and 25 L.R.A. (N.S.) 727. See also note in 31 Am. St. Rep. 714.

well, each paying half of the cost thereof, and afterwards B, my warranty deed, sold his lot and interest in said well and appliances to D, and A afterwards refused to allow D to use said well, and fenced in the same, two subsequent surveys of said premises having shown that as a matter of fact the well was 20 inches from the dividing line and wholly within A's lot; *held*, that equity will, in case of such a mistake of location, presume a license in B and his grantees to use said well and to the reasonable access thereto, but that said license will be revocable upon the payment to said B or his grantees of the money expended both in the digging of said well and their proportionate interest in the improvements constructed thereon.

**Boundaries — evidence.**

2. It is further *held*, that the digging and location of said well was in no manner a settlement of the boundary line between the two lots, and that a subsequent survey, though not made by the county surveyor of the particular county in which the well was located, would be competent, and, if not disproved by better evidence, conclusive evidence of the true location of said dividing line.

**Quieting title — Homestead.**

3. *Held*, further, that it was immaterial that the wife of A did not join in any written deed or conveyance, the evidence though tending to show that A's lot was probably occupied as a homestead at the time of the purchase of the adjoining lot by D, being absolutely silent as to whether said lot was occupied as a homestead at the time of the construction of the well.

**Homestead — defense.**

4. A defense of homestead must be specially pleaded.

Opinion filed October 3, 1912.

Appeal from the District Court of McLean county; *Winchester, J.*

Action to quiet title to an undivided half interest in a well, as an interest in real property, and for further equitable relief. Judgment for defendant. Plaintiff appeals.

Reversed.

This action was brought to have adjudged to the plaintiff an undivided one-half interest in a certain well, pump, and windmill, and to have the defendant enjoined from interfering with the plaintiff's use and enjoyment thereof, and to compel such defendant to remove a certain fence constructed for the purpose of preventing such use. The evidence showed that in May, 1905, one E. A. Hull, who owned and resided on lots 9 and 10, block 10, in the town site of the village of Wilton, James Bartron, Sr., who owned and resided upon lot 8, block

10, and one R. A. Laubach, a professional well digger, entered into an agreement that said Laubach should sink a well with a pump and other necessary appliances upon the line between said lots 8 and 9, and that each of said three parties should have a common one-third interest in said well and appliances, and that each should bear a third of the cost of digging and equipping the same. It was also contemporaneously agreed that if it was afterwards ascertained that the well was not upon the true boundary line of the said lots, "the ownership should remain as it was, regardless of any change in the line." This contract was put in writing, but at no time was it signed by either of the parties. A day or two afterwards measurements were made by Hull and Bartron, Jr., and there being no corner stake or monument, the line was located as nearly as it could be by such measurements, and the well sunk on the line of a fence which was supposed to extend between said lots. The evidence also shows that the original town-site plat of the village was used, but whether such fence was marked upon said plat or not does not appear. While the well was in process of construction, Hull and Bartron, Jr., told Laubach that they desired the original contract so qualified that if, and whenever, said Laubach got ready to sell his one-third interest, Hull and Bartron, Jr., should have the preference as purchasers, and to this Laubach consented. Each party paid his share of the expenses of construction.

In December, 1905, Laubach sold his interest to Hull and Bartron, Jr., in equal shares. Later a windmill was erected over the well at a cost of $60, and paid for by both parties in equal shares. On November 23, 1906, Hull sold and conveyed his lot and his one-half interest in said well and appliances, including the windmill, by warranty deed to the plaintiff, Johnson, and plaintiff seems to have used the water without verbal objection by Bartron until about May, 1908, though the latter seems to have interfered with plaintiff's use by "taking pails and the spout off," as early as two days after plaintiff's purchase of the lot. In the summer of 1909, however, Bartron, Jr., built a fence across the platform of the well so as to shut off the plaintiff's access thereto, and though there was a gate in the fence for sometime and a short distance from the well, it was closed by the defendant in the spring previous to the trial of the lawsuit. A surveyor (though not the county surveyor of McLean county) testified that two surveys made by him had located

the well some 21 inches on defendant's side of the boundary line between the two lots.

The trial court found as a conclusion of facts that the well was entirely upon the land of the defendant, and as a conclusion of law that the plaintiff was not entitled to the relief prayed for. From a judgment dismissing this complaint, plaintiff appeals and asks for a trial *de novo* in this court.

*J. P. Williams* (*Newton & Dullam*), for appellant.

The conveyance of a well with appliances or utensils includes the site of the well, and is distinguished from a mere water right, which is an easement. Johnson v. Raynor, 6 Gray (Mass.) 107; Ocean Causeway v. Gilbert, 54 App. Div. 122, 66 N. Y. Supp. 401; Mixer v. Reed, 25 Vt. 257.

So far as the conveyance of Labauch's interest to defendant and Hull is concerned, the evidence of this conveyance was entirely oral; but since no objections were interposed, the best evidence rule does not apply. Goodall v. Norton, 88 Minn. 1, 92 N. W. 445; 17 Cyc. 468; Courtney v. Neimeyer, 33 Neb. 796, 51 N. W. 234.

There was a duty on the part of the defendant to assert his claim before plaintiff purchased in reliance upon Hull's ownership. Johnson v. Erlandson, 14 N. D. 518, 105 N. W. 722.

The location of the well would be sufficient to raise a presumption that the boundary thus determined was the correct boundary. 5 Cyc. 939; Radford v. Johnson, 8 N. D. 182, 77 N. W. 601; Arneson v. Spawn, 2 S. D. 269, 39 Am. St. Rep. 783, 49 N. W. 1066; 5 Cyc. 941, 949; Diehl v. Zanger, 39 Mich. 601.

*T. R. Mockler,* for respondent.

Adverse possession is never acquired by a mutual mistake between parties as to the boundary lines. Webster v. Shrine Temple Co. 141 Iowa, 325, 117 N. W. 665.

BRUCE, J. (after stating the facts as above.) It seems to be perfectly clear from the evidence that there was no conveyance of land from the defendant to the plaintiff's grantor, Hull, or any intention that there should be. It is equally clear, however, that it was the intention of the three parties to the original agreement that each should enjoy the use of the well in common, and that each contributed towards the cost of the

construction thereof. The intention of such parties was that the well should be upon the boundary line, and the whole controversy has arisen from a mistake as to where such line was actually located. It is, however, undisputed that at the time of the location of the well it was agreed that the ownership "should remain as it was, regardless of any change in the line." Under the peculiar circumstances of the case, a court of equity should imply a license to pass upon the land of the defendant and to use the well, in the plaintiff, but a license which would be revocable upon the payment to the licensees of the money expended by the plaintiff's grantor in the construction of the well, and his half of the interest purchased from Laubach, and half of the reasonable value of the windmill which was erected jointly by the defendant and the plaintiff's grantor.

We know that there is a wide divergence among the authorities as to whether a license is revocable at all, where the licensee had acted under the authority conferred and has incurred expense in the execution of it by making valuable improvements or otherwise. See 25 Cyc. 646–648; Notes to Lawrence v. Springer, 31 Am. St. Rep. 702–719, and to Ricker v. Kelly, 10 Am. Dec. 38–45; Washb. Easements, 4th ed. 7–18. We believe the better rule to be that where nothing more than a mere license appears it is revocable at the will of the licensor, whatever expenditures the licensee may have made, provided the licensee has reasonable notice and opportunity to remove his fixtures and improvements, or, in case of joint ownership, that the licensor compensate him for the value thereof. To hold such license irrevocable would, on the other hand, be to override the statute of frauds and convert an executed license into an estate in lands, which we believe is going too far. See 25 Cyc. 646–648. To hold, on the other hand, that such a license can be revoked without making compensation or giving opportunity for the removal of the improvements would, in our opinion, be inequitable.

The fact that the wife of the defendant did not join in any deed or conveyance, though strongly urged by plaintiff as ground for sustaining the judgment of the trial court, is, in our opinion, of no moment. The rule seems to be well established that the defense of homestead should be formally pleaded. Bergsma v. Dewey, 46 Minn. 357, 49 N. W. 57; Hemenway v. Wood, 53 Iowa, 21, 3 N. W. 794; 10 Enc. Pl. & Pr. 68, notes 1 and 2. In the case at bar, also, there is no evi-

dence tending to show that the lot owned by the defendant was occupied as a homestead by him at the time of the construction of the well. All that the evidence tends to show is that it was so occupied at the time of the conveyance from plaintiff's grantor to the plaintiff.

The judgment of the district court will be reversed and the cause remanded to said court, with instructions to take testimony as to the value of the windmill erected over said well at the time of plaintiff's exclusion therefrom, and with directions to enter judgment in favor of the plaintiff for the dismissal of the suit on the payment to said plaintiff of the sum of $135 (being the $90 originally paid by plaintiff's grantor for his one third of the cost of the construction of the well and the $45 paid by him for the half interest of Laubach) plus one half of whatever the said district court shall find to be the value of the said windmill.   On the failure of the defendant to pay the said sum of money within a reasonable time to be fixed by the said district court, a judgment will be entered enjoining the defendant from obstructing plaintiff's approach to and use of said well at all times until he shall have paid to the said plaintiff the sum of $135 and one half of the value of the said windmill, or until the said well, from disuse on the part of both parties, shall have lost its value and use as a well altogether.