[File No. 7243]

E. J. LANDER and E. J. Lander & Co., a Corporation, Appellants, v. F. C. HARTSON, Respondent.

(47 NW2d 211)

Opinion filed March 30, 1951

*T. A. Toner* (*Ronald N. Davies* on oral argument) for appellants.

*Burtness & Shaft,* for respondent.

SATHRE, J. This is an action brought by E. J. Lander individually, and E. J. Lander & Co. a corporation against F. C. Hartson. The purpose of the action is to determine whether E. J. Lander or Fred C. Hartson is the owner of 260 shares of stock of the E. J. Lander corporation, now registered in the name of Hartson on the books of the corporation.

The district court held that Fred C. Hartson is the owner of the stock and plaintiffs appeal, and demand a trial de novo.

The complaint alleges in substance that E. J. Lander & Co. is a domestic corporation and that E. J. Lander is its President, a stockholder and director of said corporation; that the defendant Hartson is a director of the E. J. Lander corporation and that formerly he was its vice president and secretary, and the owner of 10 shares of stock not involved in this action, and that said defendant had for many years occupied a position of trust and confidence to the plaintiffs. That prior to July 1949, 260 shares of the common stock of the E. J. Lander & Co. was owned by the estate of H. C. Lander, deceased, at Great Falls, Montana, and that said stock has been sold by the H. C. Lander Estate to a "dummy" for $500.00 and resold at about the same time to the defendant for $1000.00. That the title to said 260 shares of stock was wrongfully taken in the name of the defendant, and thereafter, due to fraud and misrepresentation of the defendant, inadvisedly transferred on the books of the E. J. Lander & Co. and a new certificate issued to the defendant on July 30, 1949. The complaint further alleges that prior to 1949 the plaintiff E. J. Lander sent the defendant to Great Falls, Montana for the purpose of buying said 260 shares of stock for said plaintiff; that defendant concealed from the plaintiff that he had purchased the stock for himself; that on his return from Great Falls, defendant reported to the plaintiff E. J. Lander that he was unable to make a deal for the purchase of said stock; that the expenses of the defendant on said trips were paid by the plaintiff E. J. Lander & Co.

Plaintiff demands a declaratory judgment that the plaintiff E. J. Lander is the owner of and entitled to immediate possession of the stock certificate for 260 shares of stock described in the complaint.

The defendant's answer admits the allegations of the complaint, as to the corporate existence of E. J. Lander & Co. and that E. J. Lander is its president and owner of the majority of the stock thereof; that defendant has for many years been a stockholder of said corporation to the extent of ten shares of

stock not involved in this action; that sometime prior to the commencement of this action he was vice president and secretary of the E. J. Lander & Co.; that he had been in the employ of said corporation for a considerable length of time and that in such employment he was under the general control and direction of the Plaintiff E. J. Lander in his capacity as president of the corporation; denies that he occupied a position of trust and confidence to E. J. Lander individually, but admits that he occupied a position of trust to E. J. Lander & Co. a corporation. Admits that the estate of H. C. Lander of Great Falls, Montana, at one time owned 260 shares of stock of the E. J. Lander & Co. and alleges that said stock was regularly sold through probate proceedings to one Walter P. Hanson by the executor of said estate in April 1946, and that said sale was duly confirmed by the district court having probate jurisdiction.

That thereafter the said Walter P. Hanson sold and assigned said stock to Roy V. Bowker who sold and assigned said stock to the defendant Hartson. The answer denies specifically that the plaintiff E. J. Lander sent him to Great Falls, Montana to arrange for the sale of said stock to said plaintiff and alleges that the trips made by the defendant to Great Falls were in the interest of E. J. Lander & Co. in the matter of inspecting farms and ranches and other corporation business; denies that he was the agent of E. L. Lander for the purpose of buying said stock or that he was acting in a trust capacity for said E. J. Lander or that he made fraudulent misrepresentation relative to the purchase of the stock, and alleges that he purchased same in good faith for value and that certificates representing such stock were duly assigned and transferred to him on or about July 30th, 1949. And defendant prays judgment for dismissal of plaintiff's cause of action.

The facts briefly stated are as follows:

The E. J. Lander Co. is a corporation with its principal place of business at Grand Forks, North Dakota. It has a branch office at Great Falls, Montana, of which H. C. Lander, a nephew of E. J. Lander was the manager. H. C. Lander was the owner of 260 shares of stock of the Lander Corporation. He died in

February 1945 and the 260 shares of stock became part of the assets of his estate. The defendant Hartson, at the time of the death of H. C. Lander, was vice president and secretary of the E. J. Lander Corporation.

The plaintiff introduced deposition testimony of three witnesses taken at Great Falls, Montana: Walter P. Hanson, C. W. Murch, a lawyer, and Roy V. Bowker, executor of the H. C. Lander estate.

Hanson testified that he bought the 260 shares of stock at public sale for $501.00, that he bought it at the request of Roy V. Bowker, and that he turned the stock over to Bowker.

Murch testified that his firm had been counsel for Bowker as executor of the H. C. Lander estate; that Hartson called at his office on December 12th, 13th and 14th, 1945 in regard to the purchase of the 260 shares of stock belonging to H. C. Lander estate; that it was his understanding that Hartson was acting for E. J. Lander, but admitted that Hartson did not state that he was acting for E. J. Lander.

Roy V. Bowker testified that he was the executor by will of the estate of H. C. Lander estate; that he was acquainted with the defendant Hartson and knew him to be an officer of the E. J. Lander & Co. a corporation; that the H. C. Lander estate owned 260 shares of stock of said corporation; that a legal sale of the stock was had through probate proceedings in the H. C. Lander estate; that it was sold to Walter P. Hanson for $501.00; that the sale was confirmed by the court, and that Bowker took an assignment of the stock from Walter P. Hanson. He testified as to correspondence had with plaintiff E. J. Lander relative to the value and sale of the 260 shares of stock and two letters written by E. J. Lander to Bowker were introduced in evidence. One was dated May 6th, 1946 in which he expressed his attitude in regard to purchase of the 260 shares of stock by the defendant Hartson in the following language: "You refer to having a former request from Mr. F. C. Hartson as a buyer for them. That would certainly be all right with us. He is now a shareholder and interested in every way in the Company—

is the active Vice President, etc., so that there need be no misgivings on your part in that connection."

The other letter was dated July 16th, 1946 in which he also referred to the defendant Hartson as a possible buyer of the stock, stating that he was troubled with a heart affliction and did not feel justified in making obligations, and further stating that "it is entirely possible that in a year or so, Mr. Hartson will feel different about making this investment."

Bowker testified further that after he took assignment of the stock from Hanson he sold it to the defendant Hartson for $1000.00 and that thereafter he had no further interest therein. The sale to Hartson was completed July 27th, 1946.

Arthur R. Hagen a witness for plaintiff testified that in January 1947, the defendant Hartson reported to him by long distance telephone from Great Falls, Montana that Bowker would sell the 260 shares of stock for $80.00 per share, or trade for farm lands of equal value, and in 1948 reported that Bowker would sell for $100.00 per share. These reports were made by Hartson after he had bought the stock and was the owner thereof.

Hagen further testified that on July 3rd, 1949 Miles Lander, a son of Plaintiff, E. J. Lander, the defendant Hartson and Hagen were in the office of E. J. Lander & Co. at Grand Forks, and that Miles Lander asked Hartson this question: "Do I understand that you bought the H. C. Lander stock for dad and that you are holding it in trust or escrow and that you will turn it over to him at the proper time?" and Hartson answered, "Yes."

Miles Lander was not called by plaintiffs to corroborate Hagen's testimony in this respect, notwithstanding that Hartson testifying in his own behalf, denied categorically that he made this or any similar statement relative to the stock.

Hartson testified further that he attended the funeral of H. C. Lander in February 1945 as a representative of the E. J. Lander & Co. He testified that upon his return he reported to E. J. Lander that he had talked with Mr. Bowker about the stock and from his conversation with Mr. Bowker he was under the impression that E. J. Lander could not purchase the stock. That

he asked Lander if there was any objection on his part to Hartson buying it for himself; that Lander replied that he had no objection; furthermore, that if he needed to be financed in connection with the purchase that it could be arranged.

He testified that in July 1946 he bought the 260 shares of stock of the E. J. Lander & Co. for $1000.00 and received assignment thereof; that on June 30th, 1949 he presented the assignment to the treasurer of E. J. Lander & Co. for transfer to himself, and that on the same date a new certificate was issued to him, signed by E. J. Lander as president and by Hartson as secretary of E. J. Lander & Co.

The trial court held that the evidence was not sufficiently clear and convincing to sustain plaintiffs' cause of action and that the defendant F. C. Hartson was entitled to judgment declaring him to be the owner of stock involved in this action.

Plaintiffs appeal and demand a trial de novo of the entire case and assign the following specifications of error.

"The Court erred in excluding plaintiffs' Exhibit E from the evidence.

The Court erred in admitting defendant's Exhibit 1, in evidence.

The Court erred in holding in effect that under the evidence the defendant was not acting in this case as agent consciously or otherwise for E. J. Lander & Co. and E. J. Lander in negotiating for and buying the stock.

The Court erred under the Memo Opinion herein, in entering and ordering judgment in this action except a judgment of dismissal as laid down in the Memo Opinion."

Plaintiffs' exhibit "E" purported to be a letter from Roy V. Bowker to F. C. Hartson. It was not signed by Bowker and was therefore properly rejected.

Defendant's exhibit "1" was a letter written July 1944 by H. C. Lander to the defendant Hartson. The substance of the letter was to the effect that the stock then owned by H. C. Lander was not for sale. It added no weight to defendant's evidence, and its admission could not be prejudicial to Plaintiffs.

The next specification raises the question of whether the defendant F. C. Hartson, in purchasing the 260 shares of stock, was the agent or implied trustee of E. J. Lander.

Section 3–0101, Revised Code of North Dakota for 1943 defines agency as follows:

"Agency is the relationship which results where one person called the principal, authorizes another, called the agent, to act for him in dealing with third persons."

The rule is well established that agency will never be presumed but where its existence is denied the burden of proof is upon him who affirms its existence, and the proof of such agency must be clear and specific. Corey v. Hunter, 10 ND 5, 84 NW 570; Martinson v. Kershner, 32 ND 46, 155 NW 37; Stockdate v. Harlocher, 189 Wash 264, 64 Pac 2d 1015.

A presumption exists that a person acts for himself and not as the agent of another. Brumley v. Grimstead, 196 SE 688, 170 Va 340.

"The relation of agency can exist only by the will of the principal and with the consent of the agent so that, except as the parties may, as shown hereinafter in Sec. 29, be charged with the consequences of the relation by reason of estoppel, there generally must be a contract of employment, express or implied, which must possess the elements essential to every contract. Thus there must be an offer and an acceptance thereof involving a meeting of the minds of the contracting parties. It is essential to the formation of the relation that the principal shall in some manner, either expressly or by implication from the conduct for which he is responsible, appoint the agent, and it is equally essential that the agent accept the appointment.

2 CJS page 1042, Sec 18.

Section 59–0106 Revised Code of North Dakota for 1943, defines implied trusts as follows:

"An implied trust arises in the following cases:

1.—One who wrongfully detains a thing is an implied trustee thereof for the benefit of the owner;

2.—One who gains a thing by fraud, accident, mistake, undue

influence, the violation of a trust, or other wrongful act, is, unless he has some other and better right thereto, an implied trustee of the thing gained for the benefit of the person who would otherwise have had it;

3.—Each one to whom property is transferred in violation of a trust holds the same as an implied trustee under such trust, unless he purchased it in good faith and for a valuable consideration;" . . . .

The rule of law governing implied trusts is clearly stated in the case of Bodding v. Herman, 76 ND 324, 35 NW2d 561 as follows:

"The evidence to establish an implied trust, however, must be clear and convincing. There must be a satisfactory showing of a wrongful detention of the property, or fraud, undue influence, the violation of a trust, or other wrongful act by virtue of which the party is holding title to property which he should not hold under the rules of equity and good conscience. The evidence must be strong enough to lead to but one conclusion. If the evidence is doubtful or capable of reasonable examination upon theories other than the existence of a trust it is not sufficient to establish a trust. Sec 35 ALR 286, 307; 45 ALR 852; 80 ALR 198 and cases cited. See also 2 Bogert on Trusts and Trustees, Sec 464."

We are agreed that under the rule of law quoted the plaintiffs have failed to establish by the degree of proof required that the defendant Hartson was the implied agent or trustee of, and held the stock in question in trust for the plaintiff E. J. Lander.

Finally counsel for plaintiffs argue that under its memorandum opinion the District Court contemplated no relief to the defendant except the dismissal of the action.

There is no merit in this contention. The complaint alleges facts and circumstances upon which the plaintiff, E. J. Lander bases his right to ownership of the stock and demands judgment that he be declared the owner. The defendant denies the allegations of the Complaint, and likewise alleges facts and circumstances in support of his claim of ownership to the stock, and demands judgment in his favor and for dismissal of plaintiffs'

932

cause of action. The issue raised by the pleadings is therefore whether E. J. Lander or F. C. Hartson was the legal owner of the stock in question, and on this issue the case was tried.

The memorandum of opinion of the trial court is not the decision. It is an analysis of the evidence in the case. The decision is set forth in the findings of fact, conclusions of law, order for judgment and judgment which adjudged and decreed that the defendant F. C. Hartson was the sole owner of the stock involved, free and clear of any claim on the part of the plaintiffs or either of them.

The claim of the defendant Hartson to ownership of the stock involved in this action is fully sustained by the evidence, and the District Court correctly entered judgment in his favor.

Finding no error in the record the judgment of the District Court is affirmed with costs to the defendant.

MORRIS, C. J., and BURKE, GRIMSON and CHRISTIANSON, JJ., concur.