Fred M. HECTOR, Mary Hector Smith, Dorothy Hector Rowland, Margaret Hector Harrington, and Caroline Hector Dady, Plaintiffs and Appellees,

v.

METRO CENTERS, INC., an Illinois corporation, Defendant and Appellant,

and

Meinecke–Johnson Company, a North Dakota corporation, Defendant and Appellee,

and

Northern Improvement Company, a North Dakota corporation, Defendant.

METRO CENTERS, INC., Third–Party Plaintiff and Appellant,

v.

AIRPORT PLAZA CORPORATION, Third–Party Defendant and Appellant.

MEINECKE–JOHNSON COMPANY, Third–Party Plaintiff and Appellee,

v.

AIRPORT PLAZA CORPORATION, Third–Party Defendant and Appellant.

Civ. No. 920032.

Supreme Court of North Dakota.

March 18, 1993.

Jonathan T. Garaas (argued), Garaas Law Firm, Fargo, for plaintiffs and appellees Fred M. Hector, Mary Hector Smith, Dorothy Hector Rowland, Margaret Hector Harrington and Caroline Hector Dady.

J.P. Dosland (argued), Dosland, Nordhougen, Lillehaug, Johnson and Saande, Moorhead, MN, for defendant and appellant Metro Centers, Inc.

Richard Henderson (argued), Nilles, Hansen & Davies, Ltd., Fargo, for defendants and appellee Meinecke–Johnson Co. and Northern Improvement Co.

Steven L. Marquart (argued), Cahill, Maring & Marquart, Moorhead, MN, for third-party defendant and appellant Airport Plaza Corp.

ERICKSTAD, Surrogate Judge.[1]

Metro Centers, Inc. (Metro Centers), appealed from the judgment, the denial of its motion for a new trial, and from the amended judgment entered in a trespass action by Fred M. Hector, Mary Hector Smith, Dorothy Hector Rowland, Margaret Hector Harrington, and Caroline Hector Dady (Hector). Airport Plaza Corporation (Airport Plaza) appealed from the amended judgment. We affirm in part, reverse in part, and remand.

On March 31, 1981, Hector granted Metro Centers a six-month option to purchase all or part of Lots 1 and 2 of Block 1 of the Hector Airport Addition to the City of Fargo. The agreement also provided that if Metro Centers purchased less than all of the land offered, it would have an addition-

---

1. Surrogate Judge Ralph J. Erickstad was Chief Justice at the time this case was heard and serves as surrogate judge for this case pursuant to Section 27–17–03, N.D.C.C.

al one-year option from the date on which it acquired fee title to purchase the remainder of the land.

On June 29, 1981, Metro Centers exercised its option on all of Lot 1 and on the easterly 125 feet of Lot 2. Metro Centers assigned its right to purchase that parcel to Airport Plaza and retained its option on the remainder of the property. Metro Centers' option on the remaining property ultimately expired without being exercised.

Airport Plaza contracted with Meinecke–Johnson Company (Meinecke–Johnson) for the construction of a shopping center on the purchased property. Meinecke–Johnson contracted with Northern Improvement Company (Northern Improvement) for the earth work on the construction project. During the course of construction, it became necessary to dispose of excess fill dirt. Meinecke–Johnson directed Northern Improvement to place the excess dirt on the adjoining Hector land, which was subject to Metro Centers' option agreement. At first, Northern Improvement placed the dirt in stockpiles. At the direction of Meinecke–Johnson, Northern Improvement later spread the dirt out.

In 1987, Hector brought a trespass action against Metro Centers, Meinecke–Johnson, and Northern Improvement for damages resulting from the unauthorized placement of dirt on the Hector land adjacent to the construction project.

Metro Centers answered the complaint and cross-claimed against Meinecke–Johnson and Northern Improvement for contribution or indemnity if found liable to Hector. Metro Centers also filed a third-party indemnity action against Airport Plaza, alleging that the acts complained of by Hector were the acts of Airport Plaza, and that any actions it may have taken were done on behalf of, for the benefit of, and at the request of Airport Plaza.

Meinecke–Johnson answered the complaint and alleged, among other things:

"Meinecke–Johnson admits that Northern Improvement Company, acting under the direction and control of Meinecke–Johnson, placed fill dirt on the property described in paragraph 1 of the Complaint, but states that this was done at the express direction of Defendant Metro Centers, Inc., and with the knowledge and consent of Metro Centers, Inc., and based upon Metro Centers' representation that it owned the land in question."

Meinecke–Johnson cross-claimed against Metro Centers for contribution or indemnity if found liable for damages to Hector. Meinecke–Johnson also filed a third-party complaint against Airport Plaza for contribution or indemnity, asserting that the acts alleged in the Hector complaint "as having been performed by Meinecke–Johnson Company, were in fact the acts of" Airport Plaza, and that any actions Meinecke–Johnson may have taken, "were done on behalf of, for the benefit of and at the request of" Airport Plaza.

Airport Plaza answered Metro Centers' third-party complaint with a general denial. In answering Meinecke–Johnson's third-party complaint against it, Airport Plaza generally denied Meinecke–Johnson's allegations and affirmatively alleged "that any damages Plaintiff may have sustained were caused or contributed to by the acts of Defendant Meinecke–Johnson Company."

On the first day of trial, the trial court, upon motion of Meinecke–Johnson, ordered that Airport Plaza be made an additional defendant in the Hector action. The jury returned a special verdict in which it found, among other things: (1) that Meinecke–Johnson and Northern Improvement trespassed upon Hector's property; (2) that the trespass resulted in damages of $69,990; (3) that Meinecke–Johnson was acting as the agent of Metro Centers; (4) that Meinecke–Johnson and Northern Improvement were "solely directed by Metro Centers, Inc. to place the fill upon Plaintiffs' property"; (5) that Metro Centers was not acting as the agent of Airport Plaza; and (6) that Metro Centers' actions were not "done solely at the direction of, in the interest of, and in reliance upon Airport Plaza Corporation." A judgment was entered awarding Hector damages of $69,990, plus costs and disbursements against Metro Centers, Meinecke–Johnson, and Northern Improvement.

Metro Centers moved to have the trial court set aside the jury's answer on the special verdict and find that Metro Centers was the agent of Airport Plaza at the time of the trespass. Metro Centers also moved for a new trial on the ground that the court's trespass instruction was erroneous.

Meinecke–Johnson moved the court to set aside the jury's answers on the special verdict, enter judgment in accordance with its motion for a directed verdict, and make a finding of fact "that Airport Plaza directed Meinecke–Johnson to place dirt on the Plaintiffs' property" or, in the alternative, to grant a new trial.

The trial court denied Metro Centers' motion for new trial on the ground of an allegedly erroneous trespass instruction. The court granted the j.n.o.v. motions, ordering "that Defendants Meinecke–Johnson and Metro Centers' motion for Judgment N.O.V. as to the agency question is granted and that Judgment be entered that Metro Centers was acting as Defendant Airport Plaza Corporation's agent in directing Meinecke–Johnson to place dirt on the Plaintiffs' property."

An amended judgment was entered that (1) awarded Hector a judgment against Metro Centers, Airport Plaza, Meinecke–Johnson, and Northern Improvement for damages, costs and disbursements, in the amount of $72,110.60, and (2) awarded Meinecke–Johnson and Northern Improvement indemnity against Metro Centers and Airport Plaza for the full amount of the amended judgment in favor of Hectors, plus costs, disbursements and attorney fees incurred in defending the action.

### 1. Trespass instruction

Metro Centers and Airport Plaza both contend on appeal that the trial court's trespass instruction was overbroad and improperly allowed the jury to find a trespass based on either irrevocable consent or failure to remove the dirt after consent or privilege was withdrawn or terminated. They also contend that a new trial is required because it is impossible to tell which theory the jury relied on in finding a trespass.

The trial court instructed the jury on trespass:

### "TRESPASS ON LAND

"One who intentionally and without a consensual or other privilege is subject to liability to another for trespass, irrespective of whether he [t]hereby causes harm to any legally protected interest of the other, if he intentionally

"(a) enters land in the possession of the other, or causes a thing or a third person to do so; or

"(b) remains on the land; or

"(c) fails to remove from the land a thing which he is under a duty to remove.

"(The phrase 'enters land' includes not only coming upon land, but also remaining on it, and, in addition, to include the presence upon the land of a third person or thing which the action has caused to be or remain there.)

"A trespass may be committed by the continued presence on the land of a structure, chattel, or other thing which the actor has placed on the land

"(a) with the consent of the person then in possession of the land, if the actor fails to remove it after the consent has been effectively terminated; or

"(b) pursuant to a privilege conferred on the actor irrespective of the possessor's consent, if the actor fails to remove it after the privilege has been terminated, by the accomplishment of its purpose or otherwise."

Airport Plaza argues that the instruction would allow the jury to find that even if Hector consented to the placement of fill dirt on the property, Hector could thereafter revoke the consent and if Metro Centers did not remove the fill it would be a trespasser; that there was no evidence of any conditional, revocable, consent; and that the only consent that should have been an issue for the jury was whether or not Hector gave initial consent to put the dirt on the property.

Metro Centers argues that the instruction improperly allowed the jury to find a

trespass based on a theory of revocable consent. Relying on *Keystone Copper Mining Co. v. Miller*, 63 Ariz. 544, 164 P.2d 603 (1945) and *Bomberger v. McKelvey*, 35 Cal.2d 607, 220 P.2d 729 (1950), Metro Centers contends:

"It is clear that if consent was granted in this case, the license thereby granted was executed and became irrevocable when the excess fill was placed on the Plaintiff's land and leveled. Therefore, a trespass could *not* be based on a failure to remove the material when such demand was made. A finding of trespass could *only be based* on the lack of any initial consent. Unfortunately, the effect of the Court's instruction is to submit both theories to the jury."

We must decide if the trial court erred in giving an instruction by which the jury could find that Hector successfully revoked any consent given for the placement of fill dirt on Hector land adjoining the construction project.

■ Reliance on decisions such as *Keystone Copper Mining Co. v. Miller, supra,* and *Bomberger v. McKelvey, supra,* for the proposition that a license executed by the expenditure of funds is irrevocable, is misplaced. In this state, "[a] license is merely a permit or privilege to do what otherwise would be unlawful." *Lee v. North Dakota Park Service*, 262 N.W.2d 467, 470 (N.D.1977). A license "conveys no estate in affected property, and is generally revocable at will without notice." 262 N.W.2d at 471, *quoting* 25 *Words and Phrases*, "License", p. 231 (1961) [citing *Strandholm v. Barbey*, 145 Or. 427, 26 P.2d 46, 51 (1933)]. A license is not property "requiring just compensation for its taking." *Lee v. North Dakota Park Service, supra,* 262 N.W.2d at 478. "[W]here nothing more than a mere license appears, it is revocable at the will of the licensor, whatever expenditures the licensee may have made, provided the licensee has reasonable notice and opportunity to remove his fixtures and improvements." *Johnson v. Bartron*, 23 N.D. 629, 633, 137 N.W. 1092, 1093 (1912). Our case law thus supports the proposition that an initial consen-

sual license may be revoked. The trial court's instruction was a correct statement of the law.

■ We next consider whether or not there is evidence to support a revocation theory in this case. Before the trial began, counsel for Hector stated that revocation of consent might be an issue:

"If there is, in fact, a consent, then it can be revoked at will. It was in fact revoked by a number of things, including letters to Metro Centers, telling them to get the dirt off; and a summons and complaint. And it just merely changes the type of trespass. So consent is not a defense in this action."

Fred Hector testified: (1) Dumping dirt on the option property was first discussed when the warranty deed was issued. He told Burton Glass, vice president of Metro Centers and Airport Plaza, that he wasn't interested in having any dirt dumped on any of the Hector property. (2) He never gave permission to dump dirt on the Hector property. (3) He was not aware that dirt had been placed on the Hector land until he got a letter from the City of Fargo telling him to mow weeds. He "sent Mike Fields [, president of Metro Centers and Airport Plaza,] the bill. And I said, 'I don't know anything about these weeds, this pile of dirt. Pay the mowing.' So he paid the mowing." (4) The next year, he got another mowing bill from the City of Fargo. He "sent it to Mike. And Mike said, 'Mow your own weeds.'" (5) On February 22, 1984, he demanded that Metro Centers remove the dirt. (6) The dirt has not been removed.

Mike Fields testified: (1) He did not have a conversation with Fred Hector in which Hector orally consented to dumping dirt on his property. (2) Metro Centers had *no* written consent. (3) Fred Hector consented to the dumping of dirt on his property in an August, 1981, telephone conversation with Burton Glass and in another telephone conversation with Glass in September or October. (4) A few months later, Glass advised him that Mr. Hector had objected to a large pile on the edge of his property, and that Glass "was going to make arrangements to

have that pile spread out in a more suitable fashion for later use." (5) Metro Centers paid a bill for mowing when it still had an option to purchase the land. (6) He considered the fill a benefit to the property.

Burton Glass testified: (1) The fill dirt benefited the Hector land. He told Fred Hector "that I felt that it would be to his advantage. if it was put on his property," and Fred said he would think about it. (2) He later instructed Randy Johnson of Meinecke–Johnson to show Fred the engineering drawing showing how it was of benefit to him. After Fred Hector had been shown the engineering drawings, Glass told Johnson, "you can put the material on there." (3) His next contact about the fill was a telephone conversation in which Fred Hector said, "I have got piles here." Glass told Fred he would take care of it and told Johnson to spread the dirt out over the site. (4) When Fred called about the piles, he didn't ask to have the dirt removed. He told Fred that he would get it leveled.

As the trial court recognized in its "consent" instruction, consent "may be manifested by action or inaction and need not be communicated to the actor." In our view, the jury could reasonably draw from the evidence an inference that Hector did not object, and thereby consented, to the placement of fill dirt on the Hector property as long as Metro Centers had an option to purchase the land and intended to do so and as long as the placement of the dirt on the Hector land did not cost any money. The jury could further infer from the evidence that when Metro Centers' option expired and the placement of the dirt on the Hector land started to cost Hector money because Metro Centers would no longer pay the mowing bills, Hector revoked consent to store the dirt there and demanded its removal. The evidence supports those inferences, and our case law supports the text of the trespass instruction. The trial court, therefore, did not err in its trespass instruction.

### 2. Judgment N.O.V.

■ Airport Plaza contends that the trial court erred in granting j.n.o.v. on the issue

of the agency relationship between it and Metro Centers. In its special verdict, the jury specifically found that when the trespass occurred, Metro Centers was not acting as the agent of Airport Plaza. In granting the motions of Meinecke–Johnson and Metro Centers for j.n.o.v., the trial court ruled:

"The Court having reviewed the evidence presented on the agency issue at trial concludes that it leaves but one and only conclusion, that Metro Centers was the agent of Airport Plaza and as such it was acting on behalf of Airport Plaza in directing Meinecke–Johnson to deposit dirt on the Plaintiffs' property.

"Both the President Mike Field and Vice President Burton Glass of Metro Centers testified at trial that Metro Centers was acting as Airport Plaza's agent when it directed Meinecke–Johnson to place dirt on the Plaintiffs' property. The two corporate entities, Metro Centers, Inc., and Airport Plaza Corporation, had the same shareholders and directors, same office, address, and telephone number. Airport Plaza Corporation was also to benefit from this land development project.

"None of the above mentioned evidence was disputed during trial. Accordingly, the Court concludes that no reasonable people can reach a different decision based on the evidence."

We disagree.

■ A person is presumed to act for himself and not as the agent of another. *Johnson v. Production Credit Ass'n*, 345 N.W.2d 371 (N.D.1984); *Lander v. Hartson*, 77 N.D. 923, 47 N.W.2d 211 (1951). Agency will never be presumed. *Lander v. Hartson, supra.* "Agency is a matter of fact." *Fleck v. Jacques Seed Co.*, 445 N.W.2d 649, 651 (N.D.1989). If an agency relationship is denied, the party alleging agency must establish it by clear and convincing evidence. *Id.; Johnson v. Production Credit Ass'n, supra.*

The standard for ruling on a motion for j.n.o.v. is stated in *Okken v. Okken*, 325 N.W.2d 264, 267 (N.D.1982):

**119**

"In determining if the evidence is sufficient to create an issue of fact, and hence in determining if judgment n.o.v. should be granted, the trial court must employ a rigorous standard with a view toward preserving verdicts. *Riebe v. Riebe*, 252 N.W.2d 175 (N.D.1977). The test is whether or not the evidence, when viewed in the light most favorable to the party against whom the motion is made, leads to but *one* conclusion as to the verdict about which there can be no reasonable difference of opinion. *Staiger v. Gaarder*, 258 N.W.2d 641 (N.D.1977). In employing this standard, the trial judge ... is required to accept the truth of the evidence presented by the party opposing the motion and the truth of all reasonable inferences from that evidence which support the jury verdict."

In reviewing a trial court's decision to order j.n.o.v., this court "must examine the trial record and then apply the same standard that the trial court was required to apply initially." *Okken v. Okken, supra*, 325 N.W.2d at 267.

██ A jury need not accept even undisputed testimony. *Grenz v. Kelsch*, 436 N.W.2d 552 (N.D.1989); *Waletzko v. Herdegen*, 226 N.W.2d 648 (N.D.1975). If reasonable men can come to different conclusions when testimony is considered in light of all the surrounding circumstances, "the final decision on that testimony is always for the jury." *Burt v. Lake Region Flying Service, Inc.*, 78 N.D. 928, 54 N.W.2d 339, 345 (1952).

Mike Fields testified: (1) Metro Centers is an Illinois corporation formed in 1976. Airport Plaza was incorporated as an Illinois corporation in 1981. (2) In 1981, he and Burton Glass were the president and vice president, respectively, of both corporations. Fields owned ⅔ of each corporation and Glass owned ⅓. (3) Metro Centers and Airport Plaza had the same address, the same employees and the same telephone number. If someone called that telephone number, the receptionist answered "Metro Centers." (4) Metro Centers exercised its option to purchase part of the Hector land. Metro assigned the right to purchase that part to Airport Plaza. Airport Plaza owned the title to the property where the stores were built. Metro Centers retained an option to purchase the remaining 8½ acres from Hector. (5) At all times material to the Complaint, "Metro Centers was also an agent of Airport Plaza." (6) "Metro Centers was organized as the continuity corporation ... it was the one that stayed in existence throughout all of our activity." "We frequently and we customarily organize a new entity for each project. And that entity would be given a name that was local to that area." (7) Airport Plaza was created solely for the purpose of this project and once the project was completed, the purpose for Airport Plaza was completed. Shortly after the transaction, Metro Centers continued, and Airport Plaza became a defunct corporation. (8) Metro Centers paid preconstruction and construction expenses and was reimbursed by Airport Plaza. In doing work after construction was started, Metro Centers was acting as the agent of Airport Plaza. (9) If the contractor could dispose of the dirt cheaply, it would have saved money for the contractor and subcontractor, not Airport Plaza. Under the construction contract, he believed the responsibility of finding a place to put fill dirt was shifted to the contractor. (10) "We" viewed the fill dirt on the option land as an advantage to the property in taking care of a drainage problem. (11) "We" had high hopes of being able to build additional out lots, such as banks and restaurants, on the adjacent land. (12) The fill on the option property would be a benefit to the party who exercised the option to purchase it.

Burton Glass testified: (1) In a telephone conversation with Fred Hector, he told him "we" had surplus fill available and it would improve the value of his land. (2) The land would be benefited by having the grade raised to improve drainage. (3) When the fill was spread on the Hector property, Metro Centers still anticipated developing that area. "We" knew that the fill would be needed at some point down the road for development activity. (4) He was an employee of Metro Centers at the time he directed Meinecke–Johnson or its subcon-

tractor to place the dirt on the Hector property and that anything he did while an employee of Metro Centers in regards to this project, was Metro Centers acting as the agent of and on behalf of Airport Plaza. (5) It was Meinecke–Johnson's responsibility to remove the excess material.

Randall E. Johnson, president of Meinecke–Johnson, testified: (1) Meinecke–Johnson dealt with Metro Centers and Burton Glass. (2) Glass indicated that Metro Centers had an option on the land, so "we" could put the excess fill there. (3) Everything "we" did was with Metro Centers. (4) When Meinecke–Johnson dealt with Metro Centers or Mr. Glass as the representative of Metro Centers, Meinecke–Johnson was aware that Metro Centers or Mr. Glass were acting as agents for the owner, Airport Plaza.

Viewing the evidence in the light most favorable to the party against whom the motion for j.n.o.v. was made, with a view toward preserving the jury verdict, and accepting the truth of all reasonable inferences from the evidence which support the jury verdict, we conclude that the trial court erred in setting aside the jury's finding that Metro Centers was not acting as the agent of Airport Plaza when the trespass occurred and erred in ordering j.n.o.v.

Despite the undisputed testimony of Fields and Glass that Metro Centers was acting as Airport Plaza's agent when it directed Meinecke–Johnson to place dirt on the Hector land adjoining the construction site, and notwithstanding a contract between Airport Plaza and Meinecke–Johnson, which purported to make Metro Centers the agent of Airport Plaza in matters relating to this construction project (not the unsold real property), we believe that, in light of the evidence that Metro Centers—not Airport Plaza—held an option to purchase the Hector land adjoining the construction site, that "Metro Centers was organized as the continuity corporation," that Airport Plaza was to cease to exist once the construction project was completed, that Fields and Glass viewed the fill dirt on the option land as an advantage to the property, that Metro Centers intended to exercise its option to purchase the option land and anticipated developing that area, and that Fields and Glass believed that the fill on the option property would be a benefit to the party who exercised the option to purchase it, the jury could reasonably have drawn an inference that in directing Meinecke–Johnson to place the excess fill on the Hector land adjoining the construction site, Metro Centers was acting on its own behalf and not on behalf of Airport Plaza.

### 3. Judgment against Airport Plaza in favor of Hector

■ Airport Plaza contends that the trial court erred in ordering judgment against Airport Plaza in favor of the plaintiffs. The sole ground raised is that when the trial court ordered that Airport Plaza would become an additional defendant in the case, "Plaintiffs never amended their Complaint to assert any ·direct cause of action against Airport Plaza" and, because "there are no pleadings raising any issues of the Plaintiffs against Airport Plaza ... the Judgment in favor of the Plaintiffs against Airport Plaza should be vacated." In support of this contention, Airport Plaza has cited three cases—*Swartz v. Peterson,* 199 Neb. 171, 256 N.W.2d 681 (1977); *Harrison v. Grizzard,* 192 Neb. 243, 219 N.W.2d 766 (1974); and *Nehring v. Niemerowicz,* 226 Wis. 285, 276 N.W. 325 (1937)—for the proposition that "[a]s a general rule, a judgment must be supported by the pleadings."

Hector and Meinecke–Johnson rely on Rule 19(a), N.D.R.Civ.P., as a ground upon which to make Airport Plaza a direct defendant in order to protect Meinecke–Johnson from incurring a substantial risk of inconsistent obligations. Rule 19, F.R.Civ.P., from which our rule was drawn, "is designed to protect the interests of ... persons ... before the court from multiple litigation or inconsistent judicial determinations." 7 Charles A. Wright et al., *Federal Practice and Procedure: Civil 2d* § 1602 (1986). Furthermore, "[a]djudication of a case in the absence of persons who have a strong interest in the dispute may lead to a duplication of effort for all concerned. For this reason Rule 19 has been formulated to

avoid circuity of actions and in this sense is an aid to judicial administration." *Id.* In commenting on third-party practice under Rule 14, F.R.Civ.P., from which Rule 14, N.D.R.Civ.P., was drawn, the same authors have observed:

"Since the 1948 amendment the courts generally have tended to deal with the question of adversity by concluding that, except for those suits in admiralty specifically provided for in Rule 14(c), a formal amendment of plaintiff's complaint is not necessary if the parties actually treat each other in an adverse manner."

*Federal Practice and Procedure: Civil 2d* § 1459 (1990).

From the argument presented, we are not persuaded that the trial court erred in ordering judgment against Airport Plaza in favor of the plaintiffs.

### 4. Indemnity

Airport Plaza contends that the trial court erred in entering a judgment of indemnity against Airport Plaza in favor of Meinecke–Johnson and Northern Improvement. Airport Plaza asserts that, as joint tortfeasors, Meinecke–Johnson and Northern Improvement are not entitled to indemnity.

In *Sayler v. Holstrom,* 239 N.W.2d 276, 280–281 (N.D.1976), this court said, quoting *Steuber v. Hastings Heating & Sheet Metal Co.,* 153 N.W.2d 804, 808 (N.D.1967):

"[T]he right of a person exposed to liability and compelled to pay damages on account of the negligent or tortious act of another to indemnity from the latter * * * does not apply where both parties are joint tortfeasors, or are in pari delicto, as where the act of each of the parties contributed to cause the injury."

This court also quoted *Hendrickson v. Minnesota Power & Light Company,* 258 Minn. 368, 104 N.W.2d 843, 848–849 (1960):

" 'Although the modern view, prevailing in this state, does not preclude indemnity among joint tortfeasors, the situations in which it is allowed are exceptional and limited. A joint tortfeasor

may generally recover indemnity only in the following situations:

* * * * * *

" '(2) Where the one seeking indemnity has incurred liability by action at the direction, in the interest of, and in reliance upon the one sought to be charged.' "

*Sayler v. Holstrom, supra,* 239 N.W.2d at 280. *See also Restatement (Second) of Torts* § 886 B:

"(1) If two persons are liable in tort to a third person for the same harm and one of them discharges the liability of both, he is entitled to indemnity from the other if the other would be unjustly enriched at his expense by the discharge of the liability.

"(2) Instances in which indemnity is granted under this principle include the following:

* * * * * *

"(b) The indemnitee acted pursuant to directions of the indemnitor and reasonably believed the directions to be lawful;

"(c) The indemnitee was induced to act by a misrepresentation on the part of the indemnitor, upon which he justifiably relied; . . ."

We have no hesitation in concluding that Meinecke–Johnson and Northern Improvement are entitled to be indemnified for their liability to Hector. In directing Northern Improvement to place the excess fill on the Hector land adjoining the construction site, Meinecke–Johnson was acting "at the direction, in the interest of, and in reliance upon the one sought to be charged" [*Sayler v. Holstrom, supra,* 239 N.W.2d at 280 (quoting *Hendrickson v. Minnesota Power & Light Company, supra,* 104 N.W.2d at 848–849) ], which includes at least Metro Centers and perhaps Airport Plaza, as well.

Airport Plaza argues that the jury's answers to special interrogatories 5 and 7 preclude indemnity liability on the part of Airport Plaza. In special interrogatory 5, the jury found that at the time of the events out of which the trespass arose, "Meinecke–Johnson Company/Northern

Improvement Company" were "solely directed by Metro Centers, Inc. to place the fill upon Plaintiffs' property." In special interrogatory 7, the jury found that Metro Centers' actions in directing the trespass upon the plaintiffs' property were not "done solely at the direction of, in the interest of, and in reliance upon Airport Plaza Corporation." Those findings do not necessarily preclude indemnity liability on the part of Airport Plaza. Airport Plaza conducted its business with others in a way that made it and Metro Centers appear to be indistinguishable. As this court said in *Hagel v. Buckingham Wood Products, Inc.*, 261 N.W.2d 869, 877 (N.D.1977): "We believe that he who creates an erroneous impression and stands to gain from the transaction should be held liable for the resulting damages, if any, to the innocent third party." [2]

### 5. Attorney fees

Airport Plaza contends that the trial court erred in requiring it to pay Meinecke–Johnson and Northern Improvement the attorney fees they incurred in defending this action. Relying on *Conrad v. Suhr*, 274 N.W.2d 571 (N.D.1979), Airport Plaza argues that Meinecke–Johnson and Northern Improvement are not entitled to recover attorney fees because they were "at least partially defending against allegations of its own fault." We disagree.

This case falls within the rule of *Blair v. Boulger*, 336 N.W.2d 337 (N.D.), *cert. denied*, 464 U.S. 995, 104 S.Ct. 491, 78 L.Ed.2d 685 (1983), in which we adopted *Restatement (Second) of Torts* § 914 as a third-party exception to the general rule that attorney fees may not be awarded as

an element of damages. *Restatement (Second) of Torts* § 914 provides:

"(2) One who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for loss of time, attorney fees and other expenditures thereby suffered or incurred in the earlier action."

Meinecke–Johnson and Northern Improvement, through the tort of another, have been required to act in the protection of their interests by defending a trespass action brought by Hector. As we said in *Blair v. Boulger, supra*, 336 N.W.2d at 340: "So long as the wrongful acts of a person cause another to become involved in litigation with a third party, the expense of litigating against the third party may be recovered from the wrongdoer who caused the litigation." We see no need to distinguish between wrongdoing attributable to Metro Centers and wrongdoing attributable to Airport Plaza. We conclude that the trial court did not err in requiring Airport Plaza to pay Meinecke–Johnson and Northern Improvement the attorney fees they incurred in defending this action. [3]

We deem it necessary to respond to some of the points raised in Justice Meschke's concurring opinion.

We state in the majority opinion that there is evidence from which "the jury could reasonably have drawn an inference that in directing Meinecke–Johnson to place the excess fill on the Hector land adjoining the construction site, Metro Centers was acting on its own behalf and not on behalf of Airport Plaza." Of that permissible inference from the evidence, Justice Meschke states:

---

2. Airport Plaza did not argue in its brief that if we reverse the trial court's order granting j.n.o.v. on the issue of the agency relationship between Metro Centers and Airport Plaza, then there would be no basis upon which to hold it liable for indemnity under *Sayler v. Holstrom, supra*. If Airport Plaza intended to raise such an issue at oral argument, it was done so obliquely as not to warrant our attention. We will, therefore, not address this matter.

3. Airport Plaza did not argue in its brief that if we reverse the trial court's order granting j.n.o.v. on the issue of the agency relationship between Metro Centers and Airport Plaza, then there would be no basis upon which to hold it liable, under *Blair v. Boulger, supra*, for the attorney fees that Meinecke–Johnson and Northern Improvement incurred in defending this action. If Airport Plaza intended to raise such an issue at oral argument, it was done so obliquely as not to warrant our attention. We will, therefore, not address this matter.

"I would not disagree with that permissible inference in a dispute between the principal and agent, Airport Plaza and Metro Centers. But Airport Plaza did not cross-claim against Metro Centers. Thus, this inference is not material to Airport Plaza's liability as a principal to the injured person, Hector."

We are not certain what Justice Meschke means. While an appellee may not be able to raise some matters in an appeal without filing a cross-appeal, we know of no rule that prevents an appellant from raising an issue on appeal without having cross-claimed against other parties. Furthermore, the stated inference has been raised in a dispute between Airport Plaza and Metro Centers and is material to the issue of Airport Plaza's liability for damages sustained by Hector.

After Hector sued Metro Centers, Metro Centers, as we have already observed, filed a third-party indemnity action against Airport Plaza. In its third-party complaint against Airport Plaza, Metro Centers alleged:

"II

"By Assignment dated July 22, 1981, the Defendant and Third Party Plaintiff Metro Centers, Inc., assigned all of its right, title and interest under the Option Agreement dated March 31, 1981, to the Third Party Defendant Airport Plaza Corporation.

"III

"Thereafter, all of the acts complained of in the Complaint as having been performed by Metro Centers, Inc., were in fact the acts of the Third Party Defendant Airport Plaza Corporation and not the acts of the Third Party Plaintiff Metro Centers, Inc.

"IV

"Any actions that Metro Centers, Inc., may have taken in relation to the events complained of in the Complaint, were done on behalf of, for the benefit of, and at the request of Third Party Defendant Airport Plaza Corporation.

"V

"Defendant and Third Party Plaintiff Metro Centers, Inc., is entitled to indemnity from Third Party Defendant Airport Plaza Corporation for any and all sums that may be adjudged against Defendant and Third Party Plaintiff Metro Centers, Inc., in favor of the Plaintiffs in this action, together with attorneys' fees for the defense of this action."

In its answer to Metro Centers' third-party complaint against it, Airport Plaza alleged:

"I

"Denies each and every allegation of said Third–Party Complaint, except as hereinafter admitted, qualified, or explained.

\*   \*   \*   \*   \*   \*

"III

"Admits so much of Paragraph II of the Third–Party Complaint that alleges that, by assignment dated July 22, 1981, the Defendant and Third–Party Plaintiff Metro Centers, Inc., assigned its right, title, and interest under the Option Agreement dated March 31, 1981, to the Third Party Defendant Airport Plaza Corporation, but only to that property described as all of Lot 1 of Block 1 and the easterly 125 feet of Lot 2, Block 1, all in Hector Airport Addition to the City of Fargo.[4]

---

4. The reason for this allegation, of course, is that Metro Centers retained its option to purchase the Hector property adjoining the construction site. Metro Centers did not assign the right to purchase that parcel of land to Airport Plaza. That is the parcel of land upon which excess fill from the construction site was placed. As Justice Meschke noted, the contract between Airport Plaza and Meinecke–Johnson "recited that Airport Plaza was the owner of 'an option to purchase four parcels.'" None of those four parcels, however, was the Hector land upon which the excess fill was placed, which was the parcel upon which Metro Centers retained an option to purchase.

"WHEREFORE, Third–Party Defendant Airport Plaza Corporation demands judgment dismissing the Third–Party Complaint, together with an award of its costs and disbursements herein."

Thus, Metro Centers alleged that the acts complained of in the Hector complaint were the acts of Airport Plaza, not Metro Centers; that any actions Metro Centers may have taken were done on behalf of, for the benefit of, and at the request of Airport Plaza; and that it was entitled to indemnity from Airport Plaza. Airport Plaza's answer clearly denied those allegations. Thus, those pleadings just as surely created a dispute between Metro Centers and Airport Plaza as if Airport Plaza had cross-claimed against Metro Centers.

We do not disagree with the propositions stated in the agency materials cited in Justice Meschke's concurring opinion—*Farmers Union Oil Co. v. Wood*, 301 N.W.2d 129 (N.D.1980); 3 Am.Jur.2d *Agency* § 273 (1986); Restatement (Second) of Agency §§ 215, 219 (1958). We agree that the trial court correctly instructed the jury. What happened here is that a correctly instructed jury drew one of two permissible, conflicting, inferences from the evidence before it. The jury found that, in directing that excess fill be placed on the Hector land adjoining the construction site, Metro Centers was not acting as the agent of Airport Plaza. From his review of the record, Justice Meschke obviously would draw an inference that Metro Centers was acting as the agent of Airport Plaza. Our function on appeal is not to determine which inference we think a jury should have drawn from the evidence before it. Our function on appeal is to determine if there is evidence to support the jury's verdict. In other words, our function is to determine if there is evidence to support the inference that the jury did draw. The concurring opinion appears to hold that Metro Centers was acting as the agent of Airport Plaza as a matter of law when it directed the placement of excess fill on the Hector land. We disagree. Agency is a question of fact and the evidence before the jury was such that the jury could reasonably draw either of two conflicting inferences. The evidence is sufficient to support the jury verdict.

The j.n.o.v. on the issue of the agency relationship between Metro Centers and Airport Plaza is reversed. The amended judgment is otherwise affirmed. The matter is remanded for further proceedings in accordance with this opinion.

VANDE WALLE, C.J., VERNON R. PEDERSON, Surrogate Judge, and OLSON, District Judge, concur.

OLSON, District Judge, sitting in place of LEVINE, J., disqualified.

VERNON R. PEDERSON, Surrogate Judge, sitting. J. PHILIP JOHNSON, J., who was a member of the Court when this case was heard, deemed himself disqualified and did not participate in this decision.

NEUMANN and SANDSTROM, JJ., not being members of the Court when this case was heard, did not participate in this decision.

MESCHKE, Justice, specially concurring.

I concur in nearly all of the opinion by Surrogate Judge Erickstad, but I respectfully disagree with the reversal of the judgment notwithstanding the verdict on the question of agency. In my view, Surrogate Judge Erickstad's opinion confuses basic concepts of agency law, decides a different agency question than the one appealed here, and creates unsettling confusion about the result. Nevertheless, since the opinion does affirm Hector's judgment against Airport Plaza, as well as the judgment of indemnity against Airport Plaza in favor of Meinecke–Johnson and Northern Improvement, I specially concur in the result.

In the contract with Meinecke–Johnson for performance of the work on the mall, Airport Plaza made Metro Centers its agent. The contract agreed that Meinecke–Johnson would "construct all of the site work for the Premises and certain improvements on the K Mart parcel" for Airport Plaza. That contract recited that Airport Plaza was owner of "an option to

purchase four parcels" and designated Metro Centers as Airport Plaza's agent for "[a]ny notice to be given hereunder."

A principal is liable for the tort of an agent committed while acting in the scope of the agency. Restatement (Second) of Agency §§ 215, 219 (1958). Furthermore:

> If an act done by an agent is within the apparent scope of the authority with which he has been clothed, it does not matter that it is directly contrary to the instructions of the principal. The principal will, nevertheless, be liable unless the third person with whom the agent dealt knew that he was exceeding his authority or violating his instructions. Thus, if one appoints an agent to conduct a series of transactions over a period of time, it is fair that he should bear losses which are incurred when an agent[,] although without authority to do so, does something which is usually done in connection with the transactions he is empowered to conduct.

3 Am Jur 2d *Agency* § 273 (1986) (footnotes omitted). *See also id.*, at § 271; *Farmers Union Oil Co. v. Wood*, 301 N.W.2d 129 (N.D.1980). Because Metro Centers was clearly acting in the scope of the agency, Airport Plaza is liable to the injured party, Hector, even if Metro Centers was also disloyal and acting for its own benefit.

Surrogate Judge Erickstad marshalls evidence that would have permitted the jury to infer "that in directing Meinecke–Johnson to place the excess fill on the Hector land adjoining the construction site, Metro Centers was acting on its own behalf and not on behalf of Airport Plaza." I would not disagree with that permissible inference in a dispute between the principal and agent, Airport Plaza and Metro Centers. But Airport Plaza did not cross-claim against Metro Centers. Thus, this inference is not material to Airport Plaza's liability as a principal to the injured person, Hector.

The opinion by Surrogate Judge Erickstad affirms the judgment for Hector against Airport Plaza, and the judgment of indemnity for Meinecke–Johnson and Northern Improvement against Airport Plaza. I agree with those affirmances only because Metro Centers was acting as the agent of Airport Plaza. I see no other clear reason that makes Airport Plaza liable.

"Unless otherwise agreed, an agent is subject to a duty to his principal to act solely for the benefit of the principal in all matters connected with his agency." Restatement (Second) of Agency § 387 (1958). An agent who commits a breach of contract with the principal is liable to the principal. *Id.* at § 400. But a principal cannot dodge liability to injured persons for the agent's acts in the course of the agency when the agent also benefits itself. Here, the trial court correctly instructed the jury about the principal's responsibility:

> A corporation is responsible for the conduct of its ... agents, done within the scope of their authority in the course of their employment or in the ordinary course of the corporation business.

> \* \* \* \* \* \*

> An agent represents his principal for all purposes within the scope of his actual or ostensible authority. All rights and liabilities that would accrue to the agent from transactions within that limit, if they had been entered into on his own account, accrue to the principal.

> A principal is responsible to third persons for the negligence of his agent in transacting the business of the agency, including wrongful acts committed by the agent in and as a part of transacting the business, and for the agent's willful omission to fulfill the obligations of the principal.

These instructions are the law of the case. This law makes Airport Plaza liable for the acts of its agent, Metro Centers.

If Airport Plaza wants to sue Metro Centers for its breach of loyalty, Airport Plaza is free to seek that indemnity. In that case, the evidence that Surrogate Judge Erickstad marshalls in favor of Airport Plaza would be important. But it is immaterial to the question of whether Airport Plaza is liable to Hector, Meinecke–Johnson, and Northern Improvement, those injured by

the conduct of Metro Centers in the course of its agency. I would not inject confusing discussion about Metro Centers's motives into this decision. I would affirm the judgment n.o.v. in all respects.